## Scott's Estate. (1)    Scott's Appeal. (1)

[Marked to be reported.]

*Will—Execution of—Evidence.*

A decedent, in his last illness, caused to be prepared a paper in the form of a letter to his attorney, directing the latter to prepare a will in accordance with instructions therein. This paper the decedent executed by his signature in the presence of the scrivener, to whom he gave it for safekeeping, and who signed it as an attesting witness. After the paper was signed and delivered to the scrivener, a son of the decedent came in. The decedent had discussed the subject of his will with the son and had sent him to procure the attendance of the scrivener. In the presence of the scrivener, the decedent told his son he had then signed his will, but the son did not see the paper as prepared and executed. *Held:*

1. The signature to the paper having been proved by three witnesses, parol evidence of the declarations of the decedent to the scrivener and the son, were admissible to prove the publication of the paper, though in the form of a letter of instructions to his attorney, as his last will and testament, and that if anything happened it was to be proved as such.

2. Though the son did not see the paper when the declarations as to its publication as a will were made, yet the circumstances, his connection and familiarity with the entire transaction, pointing directly to the immediate act of disposition, made his testimony admissible, and with that of the scrivener a sufficient compliance with the statute.

Argued Nov. 9, 1891. Appeals, Nos. 314, 320, Oct. T., 1891, by John F. Scott, et al., from decree of O. C. Allegheny Co., Sept. T., 1890, No. 276, sustaining appeal from register. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

On September 24, 1890, William W. Scott, a son and heir at law of John Scott, deceased, presented his petition to the orphans' court praying upon the facts therein averred for leave to appeal from the decree of the register of wills of said county, dated April 1, 1889, admitting to probate a certain testamentary writing as the will of said deceased. A citation having been awarded, answers were filed by certain of the legatees and by the executors of the said will, when an appeal was allowed, a hearing had before the court, and testimony taken and reduced to writing.

The testimony, more fully stated in the opinion of the court below and in the opinion of the Supreme Court, was to the

effect that on March 12, 1889, Mr. Scott, the decedent, who had been confined to his house by sickness, sent for his son, John F. Scott; that the son called upon his father the same afternoon, when the decedent discussed with him the subject of a will and the disposition he wished to make of his estate; that the next day there was a further consideration of the same subject, after which the decedent sent his son for William Stewart, a life-long and intimate friend, to confer with him upon the matter; that, on March 15th, Mr. Stewart saw the decedent, who made certain suggestions as to the division of his estate and directed that Mr. Stewart go to the office in the city, and examine his books and papers and ascertain how his affairs were; that, on March 16th, Mr. Stewart, having complied with the decedent's request, returned with a statement, saw the decedent alone and submitted the statement to him, when it was discussed by both of them; that, thereupon, Mr. Stewart, under the decedent's direction prepared a paper in the form of a letter to Mr. John Dalzell, the decedent's attorney, which paper was signed by the decedent in the presence of Mr. Stewart, and witnessed by the latter; that, after the paper was signed, Mr. Stewart said he would take it to Mr. Dalzell but that he was not sure that Mr. Dalzell was in the city; that, in reply, the decedent said it was not necessary to take the paper to Mr. Dalzell, as in the condition it then was, it was good as a will, and he instructed Mr. Stewart to take it and put it in his (Stewart's) box in the safe-deposit vaults; that, while Mr. Stewart was still with the decedent, and after the paper had been signed and placed in Mr. Stewart's possession, John F. Scott, the son, came to the house and to his father's room, and in the presence of Mr. Stewart, both before and after supper, the decedent referred to the fact that he had gotten up and signed his will, and directed Mr. Stewart, if anything happened, to "have that probated;" that Mr. Stewart the next day placed the paper in his box in the safe-deposit vaults, where it remained until Mr. Scott died on March 24, 1889. Three witnesses testified that the signature to the paper was the signature of the decedent.

After argument, the court, OVER, J., on March 10, 1891, filed the following opinion and decree :

The paper admitted to probate by the register as the will of

John Scott, deceased, is in the form of a letter signed by him and addressed to his attorney, requesting him to prepare a will in accordance with the directions contained in it. It does not show a present testamentary intent, but an intention to execute another paper, which he requests his counsel to prepare as his will, and, therefore, standing by itself it could not take effect as a will: Murry v. Murry, 6 W. 353.

The proponents, however, offered evidence of declarations made by Scott that he intended the paper to take effect as his will. It is objected to this evidence (1) that it is incompetent, and (2) that the quantum of proof adduced is not sufficient under the statute requiring two witnesses.

1. Such evidence has been held to be competent in some English and American cases. In our state, the question does not appear to have been decided; although in Carson's Ap., 59 Pa. 501, and Patterson v. English, 71 Pa. 454, there are dicta favorable to its competency. But, in view of the requirements of our statute that a will shall be in writing and signed at the end thereof, the competency of such evidence is somewhat doubtful. It is not necessary, however, for the purposes of this case to decide this question; as, even if the evidence be admissible, the second objection seems well taken.

The paper was prepared by William Stewart, an intimate friend of Mr. Scott and the only subscribing witness, who testified on direct examination as to his declarations, as follows :

"He got up out of his bed, walked across the floor and signed the document. Then I told him I would take it to Mr. Dalzell. 'Why,' he says, 'that is not necessary. That is as good as a will; that is my will and as good a one as I want.' Then he cited the case of Mr. Slataper's paper, and some old case Mr. Hampton had told him about, which happened some forty years ago, where some man died and a letter to his counsel was admitted to probate. Then John F. Scott came into the room later." He also testified that the decedent told him to take the paper and put it in his box in the deposit company, and that he took it home with him that night, and that it was two or three hours after it was signed that Mr. Scott told him not to take it to Mr. Dalzell, that no other person was present then nor when it was signed, and

that no person but himself and John Scott, the decedent, saw the paper after it was written until he deposited it in his box.

The only other witness who testified to the declarations of John Scott was his son, John F. Scott. He testified that at Mr. Stewart's request he made a statement of his father's affairs; that Mr. Stewart came to his office; that he explained it to him, " told him the values I had put on and he approved of them, made no changes, and he figured the estate was worth about three hundred and fifty thousand dollars. He asked for pen, paper, and ink, and went over to the far end of the room, took the young man's desk, and sat there and figured and wrote. He said he was going out at noon and for me to come out at the usual time in the afternoon. He went out at noon, and I started out about four o'clock, went up to father's and went in the room and asked him how he felt. 'Oh,' he says, 'I am better.' He says, 'I have got up and walked over to the bureau and signed my will.' . . . After supper we went up to his room and we were sitting there smoking—father, Mr. Stewart, and myself—and he says to him, 'Now, Billy, that is as good a will as can be drawn; if anything happens to me you have that probated.' He says, 'I was up in the register's office a short time ago in the Knox-Slataper will case, and was waiting on Mr. Hampton there, and he explained to me about the case, and I called his attention to a gentleman that had written a letter to his attorney some forty years ago, just directing a will to be drawn, and that will, that letter, was made good.'" The witness further testified that he did not see the paper admitted to probate until after his father's death.

The act of assembly requires that every will shall be proved by at least two witnesses. Without proof that it was intended that this paper should take effect as a will, it is not one. The proof of John Scott's declarations to that effect, then, is necessary to establish it as a will, and must be made by at least two witnesses. Mr. Stewart's evidence is full and complete. But the evidence of the other witness, John F. Scott, is incomplete, as he fails to identify the paper admitted to probate as the one referred to by his father; and it is only by having recourse to the evidence of Mr. Stewart, the other witness, that it appears that the declarations he testifies to had reference to it.

The rule laid down by GIBSON, C. J., in Hock v. Hock, 6 S. & R. 47, is that each of the witnesses must depose to all facts necessary to complete the chain of evidence in order that no link in it may depend on the credibility of one, so that if one witness only was required, the will would be fully proved by the testimony of either. This rule has never been questioned, but affirmed and adhered to in subsequent cases : Reynolds v. Reynolds, 16 S. & R. 88; Rohrer v. Stehman, 1 W. 458; Mullen v. McKelvy, 5 W. 399; Ginder v. Farnum, 10 Pa. 100.

It is true that circumstances may supply the place of one witness. And in Carson's Ap., 59 Pa. 493, Mr. Justice WILLIAMS seems to rely upon the fact that one of the witnesses to the will, whose evidence was not clear as to its identity was corroborated by the other witness. But, it appears from the opinion of Justice SHARSWOOD, concurred in by Justice AGNEW, who concurred in the judgment but dissented as to the reasons given, that the evidence of the witness was complete and sufficient by itself to prove the will, if but one witness were required. In this case, there are no circumstances which connect the declarations made by the decedent to John F. Scott with the paper. The link connecting them with it depends alone upon the testimony of William Stewart, and if one witness only were required to prove the will, it would not be fully proved by the testimony of John F. Scott. It follows, therefore, that the proof adduced is not sufficient under the statute, and that the probate must be set aside and vacated.

And now, to wit, March 10, 1891, this matter came on to be heard upon petition and appeal from probate of the alleged will of decedent, and answers thereto, and testimony was taken and was argued by counsel; and upon consideration thereof, it is ordered, adjudged, and decreed that the decision of the register in admitting the instrument of writing purporting to be the last will and testament of John Scott, deceased, to probate be reversed, and said probate is set aside and vacated at cost of appellees.

—Exceptions to the decree filed by the legatees having been argued, the court in banc, on October 2, 1891, entered a final decree dismissing the same. Exceptants appealed.

*Errors assigned* were (1) in omitting to find and hold that it was competent to show by parol the declarations of John

Scott, that the paper in question was his last will and testament; and that said declarations had been fully proved by the testimony adduced in this case. (2) In not finding and holding that the said paper was duly proved as the last will and testament of John Scott by two witnesses, or by one competent and complete witness and testimony and circumstances equivalent to a second complete witness. (3) In finding and holding that the testimony of John F. Scott is incomplete to sustain said paper as the last will and testament of John Scott, deceased. (4) In decreeing that the decision of the register in admitting said paper to probate as the last will and testament of John Scott, deceased, be reversed, and that said probate be set aside and vacated. (5) In not dismissing the appeal of said W. W. Scott from said register's decision, admitting said paper to probate as the last will and testament of John Scott, deceased.

*John Dalzell*, with him *William Scott, George Gordon* and *David Q. Ewing*, for the appellants.—1. Extrinsic or collateral evidence is admissible to show that a written instrument, which on its face does not appear to be the last will and testament of the maker of it, was intended by him to be such; and the court, being satisfied by the evidence that the maker of such instrument desired and intended it to be a testamentary disposition of his property, will give it effect as his last will and testament: 1 Jarman on Wills, 25; Schouler on Wills, § 273; Torre v. Castle, 1 Curt. Ecc. 303; Jones v. Nicolay, 2 Robertson Ecc. 288; Cook v. Cooke, L. R. 1 P. & D. 241; Goods of Coles, L. R. 2 P. & D. 362; Robertson v. Smith, L. R. 2 P. & D. 43; Goods of English, 11 L. T. R. 612; Goods of Marsden, 2 L. T. R. 87; Goods of Fisher, 20 L. T. R. 684; Wareham v. Sellers, 9 Gill & J. 98; Gage v. Gage, 12 N. H. 371; Herrington v. Bradford, Walk. (Miss.) 520: Witherspoon v. Witherspoon, 2 McCord, 520. There seem to be no Pennsylvania cases directly in point, but in several of them it seems to be tacitly admitted that parol evidence should be received to show the character of the instrument: Carson's Ap., 59 Pa. 501; Patterson v. English, 71 Pa. 454; Wineland's Ap., 118 Pa. 37. These cases show clearly that parol evidence is admissible to show an animus testandi, when such animus does not appear on the face of the instrument itself.

So far as the execution of the paper by the decedent is concerned, his signature is fully proved by three witnesses. But the contention of counsel for appellees is that the proof is insufficient as to Mr. Scott's declarations that the paper was his last will and testament, and not simply instructions for a will to be drawn by his counsel: Hock v. Hock, 6 S. & R. 47, and Reynolds v. Reynolds, 16 S. &. R. 82, relied on by the appellees, both arose under the wills Act of 1705 [1 Sm. L. 33], the requirements of which were satisfied if the will were in writing, no matter whose, the signing thereof by the testator being unessential. And Barr v. Graybill, 13 Pa. 396, and Cavett's Ap., 8 W. & S. 21, are not in point. They arose under the Act of April 8, 1833, P. L. 249, the signature alone was involved, and in both cases there was a failure to comply with statutory provisions. In the present case, circumstances may supply the want of one witness, where they go directly to the immediate act of disposition, under the rule laid down in Eyster v. Young, 3 Y. 511, recognized and approved in Jones v. Murphy, 8 W. & S. 295; Reynolds v. Reynolds, 16 S. & R. 82; Mullen v. McKelvy, 5 W. 399; Carson's Ap., 59 Pa. 493.

The paper, on its face, in one sense is testamentary; that is to say, it contemplates and provides for, if it does not absolutely make, a testamentary disposition of the decedent's estate. It relates to his whole estate; it considers all the members of his family, even making mention of his wife from whom he had separated, and who, as he alleged, had no claim on his estate; and it provided even for the appointment of executors. If, instead of the address, in the first clause of the paper, the decedent had written, " This is my will," there could be no question that the proof of signature alone would have been sufficient to establish the paper as his will. The most that can be said is that, instead of saying distinctly on its face, " This is my will," it says in effect, " This is to be my will when my counsel shall have formally drawn it." The signature being fully proved, all that remained was to show the decedent's declarations with reference to the paper. As to this, John F. Scott was a competent witness: Frew v. Clarke, 80 Pa. 170.

*James F. Robb*, with him *P. C. Beard*, for W. W. Scott, ap-

pellee, and *A. M. Brown*, with him *John D. Brown*, for Chas.
V. Scott, appellee.—The letter of John Scott not being a will
upon its face, can it be made so by parol, under the present
status of the law of Pennsylvania? It is apparent that equity
will not give relief as against an heir at law, where the testa-
tor has failed to carry out his intentions in his lifetime accord-
ing to the legal requirements, and that public policy requires
a strict construction of the statute of wills, and prohibits the
bolstering up of imperfect wills by parol testimony, preferring
that decedents' estates should be distributed under the intes-
tate laws, rather than open the door to fraud and perjury:
Story's Eq. J. § 106; Willard's Eq. J. § 52; 2 Pom. Eq. J.
§ 828; Brightly's Eq. J. § 34; Iddings v. Iddings, 7 S. & R.
113; Comfort v. Mather, 2 W. & S. 453; Wallize v. Wallize,
55 Pa. 248; Sword v. Adams, 3 Y. 34; Stricker v. Groves, 5
Wh. 386; Reynolds v. Reynolds, 16 S. & R. 82; Dunlop v.
Dunlop, 10 W. 154; Clingan v. Mitcheltree, 31 Pa. 36; Clark
v. Morrison, 25 Pa. 456.

The paper in this case does not purport to be a will; this is
conceded. A paper which does not purport to be a will can
be such only for two reasons, to wit: Either that it is subse-
quently by proper writing duly executed and adopted as such;
or, that it actually therein and thereby makes such conveyances
as the law construes to be testamentary, such as a deed to take
effect after death, or a note payable by administrators, which
are in fact testamentary, a disposition of property to take effect
after death. This letter does not make any conveyance or
grant any authority; there are no apt words of gift in it; it is
not signed for any such purpose; taken at its best it but indi-
cates an intention to do a future act, which the writer may or
may not persist in doing. The failure to complete the act, in
this case, is the best evidence of the decedent's abandonment
of his purpose. Section 6 of the Act of April 8, 1833, P. L.
249, provides that every will shall be in writing, and unless the
person making the same shall be prevented by the extremity
of his last sickness, shall be signed by him at the end thereof.

In this case, there is no question raised as to Mr. Scott being
in the extremity of his last sickness, he having lived eight days
after signing the paper. How, then, can this paper, not a will
of itself, be made so? Certainly not by anything less than an

additional or supplementary writing signed at the end thereof, as required by the statute : Hays v. Harden, 6 Pa. 409 ; Wineland's Ap., 118 Pa. 37 ; Baker's Ap., 108 Pa. 510. A rational view of the Act of 1833, and the decisions thereon, would preclude any attempt to publish a paper, not testamentary upon its face, by parol testimony. If the disposition of property to take effect after death, must be reduced to writing and signed at the end thereof, how are you to add anything to it by verbal declarations ? If a writing signed at the end is not of itself a will, how are you to adopt it as a will except by a writing signed ? The statute forbids a testamentary utterance except it be witnessed by the testator's signature.

Does the quantum of proof adduced in the court below, come up to the statute requiring two witnesses ? There can be no doubt that the statute requires each link to be proved by two witnesses, either one of whom must be able to prove all the facts necessary, without referring to the other : Hock v. Hock, 6 S. & R. 47 ; Reynolds v. Reynolds, 16 S. & R. 82 ; Cavett's Ap., 8 W. & S. 21 ; Mullen v. McKelvy, 5 W. 399 ; Derr v. Greenawalt, 76 Pa. 239. Even, therefore, if parol evidence is admissible to prove the declarations alleged in this case, the testimony does not come up to the standard. Strike out the testimony of William Stewart, how much does that of John F. Scott prove? The declaration of his father to him was that he had made a will. All the material parts of his testimony point away from the paper he seeks to identify, not towards it. The decedent's death was in no manner sudden and unexpected, and there are no reasons for extending to him, or to those claiming under him, any privilege which the law would refuse to one who had the amplest opportunity to make an unequivocal testamentary disposition of his estate.

OPINION BY MR. CHIEF JUSTICE PAXSON, January 4, 1892.

This was an appeal from the decree of the orphans' court of Allegheny county, vacating the probate of the will of John Scott, deceased. The alleged will is so brief that I give it entire :

"PITTSBURGH, March 16, 1889.

"Hon. JOHN DALZELL, attorney :

"Dear sir : Will you kindly at your earliest convenience cause a will to be made for me :

"First. Providing for the payment of all my just debts.

"Second. Providing for the appointment of John F. Scott and William Stewart as executors, without bonds.

"Third. Providing for the following division of the proceeds of the real and personal property between my children as follows:

| | |
|---|---:|
| To John F. Scott | $75,000 |
| Lucy Painter | 45,000 |
| Mary O. Burns | 45,000 |
| Robert R. Scott | 45,000 |
| David S. Scott | 45,000 |
| Ella C. Scott | 45,000 |
| Herman G. Scott | 45,000 |
| William W. Scott | 0,001 |
| Charles V. Scott | 0,001 |
| Maurice Scott | 0,001 |
| Also to my grandchild John Sample Scott | 5,000 |
| | $350,003 |

"Any excess or deficiency from the gross sum of $350,003 which the estate may yield on its final settlement, to be prorated between the several heirs in the proportion which the shares designated for them bears to the aggregate of $350,003. In this connection, I desire to state that, as Mrs. Olivia R. Scott has already, as you are aware, been quite amply provided for out of my estate, it is my desire that she should not in any way participate with my children in the estate now to be divided and referred to in the foregoing statement.

"Witness:                                    Yours truly,

"WILLIAM STEWART.                         JOHN SCOTT."

The body of this paper is in the handwriting of Mr. Stewart, the subscribing witness. The signature of Mr. Scott was proved by three witnesses. There is no question as to the genuineness of the paper. That it is not in form a will may be conceded; yet if the request to Mr. Dalzell to prepare a will had been omitted, it might have passed as a testamentary paper. It contains every requisite of a valid will. It provides (*a*) for the payment of his debts; (*b*) names his executors; (*c*) divides his entire estate among his children; and (*d*) explains why he makes no provision for his wife.

The testimony shows that the paper was prepared by William Stewart at Mr. Scott's request during his last sickness; that, when Mr. Stewart brought it out to him, Mr. Scott got out of bed, signed it, and handed it back to Mr. Stewart, and told him to put it in his (Stewart's) box in the Fidelity Title & Trust Company, that it was a good will, "as good a one as I want." In the language of the witness Stewart: "He said that that will would be probated,—this document would be probated; he said it was his will." The evidence of this witness is clear and precise that Mr. Scott regarded and declared this paper to be his last will and testament.

The other witness was John F. Scott, a son of the testator. He testified that his father had spoken to him about making a will a few days before it was signed, and had directed him to send Mr. Stewart out to his residence for that purpose. Mr. Stewart came, and had an interview with Mr. Scott; the same day he requested the witness, who had the sole charge of his father's affairs, to make a statement of the amount of his estate. This statement was furnished, showing that the estate would realize about three hundred and fifty thousand dollars after paying all expenses. What next occurred is best told in the language of the witness: "He (Stewart) asked for pen, paper, and ink,—that was in 61 Fourth Avenue,—and he went over to the far end of the room, took the young man's desk, and sat there and figured and wrote. He said he was going out at noon, and for me to come out at the usual time in the afternoon. He went out at noon, and I started out about four o'clock, went up to father's, and went in the room, and asked him how he felt. 'Oh,' he says, 'I'm better.' He says: 'I have got up and walked over to the bureau, and signed my will.' I says: 'My, father, you ought not to have done that; the doctor told you to keep perfectly quiet. I think you ought to have signed that in bed.' 'Oh, no,' he says, 'I am much better; I am all right.' Q. Who was in the room at the time? A. Mr. Stewart. Q. You and Mr. Stewart and your father? A. That was all. Nothing more was then said about the will, and we had supper. After supper we went up to his room, and was sitting there smoking; father was smoking, too, and Mr. Stewart and myself, and he says to him, he says: 'Now, Billy, that is as good a will as can be drawn; if anything happens to

me, have that probated.' He says : ' I was up in the register's office a short time ago in the Knox-Slataper will case, and was waiting on Mr. Hampton there, and Mr. Hampton explained to me about the case, and I called his attention to a gentleman who had written a letter to his attorney some forty years ago, just directing a will to be drawn, and that will, that letter, was made good ; and Mr. Hampton went to the records and looked back, and was very much surprised at my memory going back forty years.' " The witness further stated that he never saw the paper in question until after his father's death and burial.

Both of the witnesses refer to the testator's familiarity with the Knox-Slataper will case,—reported in 131 Pa. 220 ; and this was probably the key-note to testator's belief that the letter to Mr. Dalzell, expressing his wishes in regard to his estate, was a will in fact, although not in form.

It was contended by the appellees (*a*) that parol evidence was not competent to show that the testator declared this paper to be his will; and (*b*) that, even if such evidence were admissible, the paper was not sufficiently proved. We cannot sustain the first proposition, nor do we think any of the authorities cited by the appellees apply to the facts of this case. It must not be overlooked that we are dealing with a genuine paper, signed by the testator, which, if not actually a will upon its face, is dangerously near one. Treating a will as the legal declarations of a man's intentions which he wills to be performed after his death, we have here the testator's intentions fully expressed. The paper itself being proved by three witnesses, we see no reason why parol evidence should not be received that he declared it to be his last will and testament.

The remaining question is more important. Was the paper sufficiently proved? Not its execution, for that, as before observed, was proved by three witnesses, but the fact that the testator intended it as his will, and declared it to be such. The law requires a will to be proved by two witnesses. We have here two witnesses as to the fact of publication as a will, but it is alleged that one of them, John F. Scott, falls short of being a full witness. This arises from the fact that he did not actually see and identify the paper on the evening of its execution.

If he were an ordinary witness, called in casually, with no knowledge of the circumstances, there would be more force

in this contention. But the witness Scott was familiar with the entire transaction. He knew his father was making a will. He had been consulted about it, and furnished the information upon which it was made. He followed Mr. Stewart out to his father's house the same afternoon, and arrived there shortly after it was signed. He there found his father and Mr. Stewart together, and was there informed by his father that he had made his will, and had given it to Mr. Stewart to keep. Moreover, the conversation plainly showed that the will was not in the usual form, but in the shape of a letter to his attorney. It is not pretended that there was any other letter, any other paper, or any other will, executed on that day by Mr. Scott, and handed to Mr. Stewart. We think the witness Scott sufficently identified the paper, and that it was proved by two competent witnesses, "each of whom make complete proof in itself, so that, if the act of assembly were out of the question, the case would be well made out by the testimony of either."

Carson's Ap., 59 Pa. 493, gives color to the position that circumstances may supply the want of one witness, when they go directly to the immediate act of disposition. In that case the will had been signed by a mark, and one of the witnesses failed to positively identify the mark as that of testator, and the court held that there were circumstances which justified the holding of the testimony of the witness to be sufficient. It is true, Justices SHARSWOOD and AGNEW held there was the full proof of two witnesses, and concurred in the judgment on that ground. If we hold that under no circumstances can a paper be proved without its actual production and inspection, we might be driven to the conclusion that the testimony of Scott was not sufficent to identify the paper, and that he was not a full witness. But he identified this paper sufficently for any of the practical business of life, and we think it a substantial compliance with the act of assembly. This view renders a discussion of the numerous cases cited on either side unnecessary. The case is sui generis, and must be decided upon its own facts and the act of assembly.

The decree is reversed, at the costs of the appellees, and it is ordered that the letters testamentary heretofore granted by the register of wills upon the estate of John Scott be reinstated.

C.