## Conlin Estate

*William W. Lipsitt* and *William F. Martson*, for proponents.

*Fred C. Houston, Jr., Thomas J. Donnelly, Harold S. Irwin* and *Tom H. Bietsch*, for caveators.

GARBER, J., April 8, 1954.—This is an appeal from the decision of the Register of Wills of Cumberland County admitting to probate an instrument in writing as the holographic last will and testament of Irene W. Conlin, dated November 4, 1952, and hereinafter fully described. A caveat was filed by counsel for Mildred M. Williams, a first cousin of decedent. Pursuant to this caveat, upon the writing being offered for probate, the register of wills held a hearing at which time an appearance was entered for all of the persons named in the writing, together with Louis G. Weinmann, a first cousin of decedent, as proponents of the will. An appearance was also entered for Mildred Williams and Irene Williams, caveators, the other two first cousins of decedent. At this hearing before the register, it was stipulated and agreed by all parties represented "that the sole issue before the register is the character of the writing signed by Irene W. Conlin and that her testamentary capacity or the validity of her signature is not at issue." When the proponents of the will offered it in probate as the last will and testament of Irene W. Conlin, objection was made to

the offer for the reasons (1) that the instrument on its face does not reveal testamentary intent; (2) said instrument is merely a memoranda; (3) the paper being nontestamentary in character, no extrinsic evidence may be offered to make it testamentary; (4) the two-witness rule applies, and all the essential elements of a will must be proved by two witnesses. On April 9, 1953, the register of wills filed his decree and admitted the subject writing to probate as the last will and testament of Irene W. Conlin and granted letters of administration, c. t. a., to Capital Bank and Trust Company, Harrisburg, Pa. The proponents of the will had filed their renunciation with the register, requesting that letters be issued to that bank. The register of wills did not base this action upon the renunciations, but on subsection 5 of section 305 of the Act of April 18, 1949, P. L. 512, 20 PS §320.305, giving him authority to grant letters to "other fit persons." The register properly determined that a grant of letters on the basis of the renunciations would require determination of a problem of distribution rather than of probate. The two caveators had renounced in favor of Farmers Trust Company of Carlisle, Pa.

A petition for a citation sur appeal from the decision of the register of wills was filed on August 20, 1953, including an order of court thereto, dated July 7, 1953, awarding a citation. On August 20, 1953, there was filed of record a stipulation of counsel, dated August 14, 1953, agreeing that the renunciations and the petitions for letters filed with the register of wills as enumerated in the petition for citation sur appeal from the register were all filed with the Register of Wills of Cumberland County not later than January 9, 1953. On August 20, 1953, there was filed of record an agreement by counsel for all parties that the appeal should be allowed without formal proceedings on the citation issued on July 7, 1953.

On November 9, 1953, there was filed of record a further stipulation of counsel in which it was agreed that the record of testimony taken before the register of wills should be submitted to the court at the hearing on said appeal in lieu of hearing the witnesses de novo, with the right being reserved to all parties to produce new or additional testimony; and in this same stipulation it was further agreed that the death of Irene W. Conlin was a suicide. While not specifically stipulated, it seems to be undisputed that Mrs. Conlin died on November 9, 1952, at about 2:30 p.m. The testimony was all taken subject to an agreement that all testimony offered should be taken subject to objection, and the contestants reserved the right to raise objections thereto at the argument of the case. In the petition for citation sur appeal, petitioners set forth that the register erred in admitting the writing to probate "for the following reasons—(a) said writing is not testamentary in character, (b) said writing was not executed animus testandi, and (c) said writing was not proved as the last will and testament of decedent by two competent witnesses." The petition also averred that the register erred in granting letters to Capital Bank and Trust Company, Harrisburg, Pa., and should have granted letters to Farmers Trust Company, Carlisle, Pa.

The paper admitted to probate by the register of wills is admittedly in the handwriting of Irene W. Conlin and the genuineness of her signature is also admitted. The writing is on the back of a single sheet of desk memorandum paper. The reverse side bears in the center near the top a calendar for the month of December 1952, and on either side thereof, a calendar for the month of November 1952 and January 1953. This blank side of the sheet is divided into two halves, one marked for December 2nd, Tuesday, and the other for December 3rd, Wednesday.

At the top of the plain side of this sheet of paper decedent wrote "one thousand (1000.00)," and then underneath that is written "Trinity Luthern Church, Camp Hill, Pa.," with a line drawn across the page immediately underneath. Below this line appears a vertical list of five names, to wit: Mrs. Mark Schreiner, Mrs. James Evans, Mrs. Frank Auer, John Conlin, Harry Daibler, with a line drawn under this last name. Then appears three additional names in vertical sequence, to wit: Lois Spangler, Mary Graham, and Woodrow Weinmann. A line is drawn across the page after this last name and this line continues vertically up the left side of the page to a place just above the first name. Written vertically outside of this line are the words, "Share equally in money." On the right side of the paper appears a line starting at the extreme right edge of the paper just under the name Woodrow Weinmann and proceeding about an inch toward the center of the page under that name, and then proceeding vertically up the sheet of paper passing through the "M" of Weinmann, and bearing toward the edge of the paper and ending just above the name "Schreiner," very close to the line drawn under "Trinity Lutheran Church, Camp Hill, Pa." This line makes a kind of box at the right edge of the paper in which is written "If any are deceased it does not go to next of kin." Beneath all of the foregoing there appears the following in vertical sequence: "Jewelry to Mary Graham—personal effects to Lois—linens, bedding, dishes, silver, rugs, furniture to Woodrow Weinmann." The two lines "Personal effects to Lois" and "linens, bedding, dishes, silver," are bracketed at the left side of the sheet, and a line is drawn under the words "linens, bedding." A short line appears at the bottom of the page, and underneath this appears the admittedly genuine signature of Irene W. Conlin, then a dash and "Nov. 4, 1952."

The first question for consideration by the court is whether or not the testamentary character of this admittedly genuine writing is apparent on its face without consideration of any extrinsic evidence. If so, it was properly admitted to probate and the appeal should be dismissed: Zell's Estate, 328 Pa. 312. The law of Pennsylvania has never required that wills be in any particular form, the principal requirement being that they be in writing and signed by testator at the end thereof, and this essential is admittedly present in this case. Another essential to all wills is the animus testandi, the intention to make a will, testamentary intent. The presence of this essential is vigorously and ably disputed by appellants. As early as 1815, in the case of Arndt v. Arndt, 1 S. & R. 256, 265, Justice Yeates wrote that "We are told in the books, there must be the *animus testandi*, a firm resolution and advised determination to make a will. The mind and intention are everything, the manner nothing." A will was defined by Blackstone as "the legal declaration of a man's intentions, which he wills to be performed after his death," and by Kent as "a disposition of real and personal property to take effect after the death of the testator."

These definitions have frequently been quoted by Pennsylvania courts, Gibson's Estate, 128 Pa. Superior Ct. 44, 47; Kauffman Will, 365 Pa. 555, 557.

As pointed out in the excellent brief filed by appellants, many odd papers have been admitted to probate as wills, a few of which we mention. "I wish Mym [sic] sister, Louisa Cock, of 104 York Road, Lambeth, to have my Schering [Charing] Cross Bank-book, for her own use ": Cock v. Cooke, 1 Law Reports, Probate and Divorce 241 (England); "When I dey I would like you to burry me and take all I got for your treatment to me and by som thin for your little Girl" and signed by Jane Wedge: 2 Notes of Cases, Ecclesiastical

and Maritime Courts 14 (England, 1842) ; "My wish is for you to draw this $2000.00 for your own use, should I die sudden": Fosselman v. Elder, Executor, etc., 98 Pa. 159; ". . . Six bonds for my brother John's three daughters, also one for my nephew John Beard, to be sold after my death": Harrison's Estate, 196 Pa. 576; "High James Rogers do give to . . . my property known as . . ." Tozer et al. vs. Jackson et al., 164 Pa. 373; ". . . Will my properti to my wief my death": Sullivan Estate, 130 Pa. 342; "I want Mamie to have my House": Hengen's Estate, 337 Pa. 547; "dear bill i want you to have farm": Kauffman Will, 365 Pa. 555.

"Papers in the form of an assignment (Coulter vs. Shelmadine, 204 Pa. 120, 53 A. 638), a deed (Turner vs. Scott, supra), a letter of instructions (Scott's Est., 147 Pa. 89, 23 A. 212), a power of attorney (Rose vs. Quick, 30 Pa. 225), an informal letter (Knox's Est., 131 Pa. 220, 18 A. 1021) have all been held to be testamentary in character": Gibson's Estate, 128 Pa. Superior Ct. 44.

Learned counsel for appellants argue that in all of the cases there were present in the writings words which could be construed as words of gift, wish or desire, and that such words are essential. They then argue that the present writing contains no such words as "I give, I wish, I want, it is my desire" and, therefore, there is absent from the subject writing the essential animus testandi. They say there are no dispositive words used by Mrs. Conlin. We agree that if this paper is to be construed a will, there must be found therein the intent by Mrs. Conlin to dispose of property at her death. If this intent can be found within the four corners of the will, no particular words expressive of such intent are required any more than particular form is required to make an effective will. The true essential is not the presence or absence of

particular dispositive words, but the presence or absence of a dispositive character of the whole, to be determined from a consideration of the entire writing. Character, not particular words, is the essential element. "The form of the writing is of but little moment if a testamentary intention be apparent from the face of the paper" (Gaston's Estate, 188 Pa. 374) ; mere matter of form is of no consequence "where independent of it, the testamentary purpose is sufficiently disclosed" (Kisecker's Estate, 190 Pa. 476) ; form of the instrument is immaterial if its substance is testamentary: Wilson v. Van Leer, 103 Pa. 600.

We cannot agree that the subject writing is lacking in dispositive words. We believe the words "share equally in money," written along the bracket embracing the eight names, is clearly dispositive in language as well as in character. Share is here used as a verb and, as such, is defined in Webster's New International Dictionary to mean "to divide and distribute in portions—to participate in, take, possess, or undergo in common—to receive, take, or possess as one's share." So used, this language becomes just as clear as though Mrs. Conlin had said that the persons within the bracket should divide her money equally among themselves. She also says "jewelry to Mary Graham, personal effects to Lois, rugs and furniture to Woodrow." We think this language is clearly dispositive.

The words "if any are deceased it does not go to next of kin," written vertically at the right-hand edge of the paper beside the eight names, is clearly the language of a will. Only a lawyer would know that under the Wills Act these words were unnecessary, and probably most attorneys would wish to check the accuracy of their recollection of the law against the act itself. The writing can speak only as of the time of Mrs. Conlin's death. Her action in disposing of her money, her jewelry, her personal effects, her rugs and

furniture, clearly indicate her intention that these gifts are to take effect at her death, otherwise she would be disposing of the things necessary to her mode of living.

Learned counsel for appellants argue that the paper is merely a memoranda made by Mrs. Conlin in connection with a plan for the preparation of a will. While it may well be that decedent intended to consult her attorney and have a formal will professionally drawn at some later date, this intent would not be inconsistent with her intent that the subject writing be her last will and testament until she executed a more formal one: Thompson Will, 375 Pa. 193. We cannot overlook the fact that we are dealing with an admittedly genuine writing of Mrs. Conlin, duly signed and dated by her, and which declares her intentions which she wishes to be performed after her death in the disposition of a portion of her property. In our opinion the fact that Mrs. Conlin signed this writing in her full name and dated it at the bottom of the sheet is wholly inconsistent with the thought that she intended it as a mere memorandum, and consistent only with the idea that she intended it as a will. As a memoranda there was no need for the signature; as a will the signature was essential. We may fairly presume from the intelligence of Mrs. Conlin reflected in the writing itself that she well knew this fact: Gaston's Estate, 188 Pa. 374.

If we were required to pass upon the subject writing without any extrinsic evidence, we would conclude that the paper in the handwriting of Mrs. Conlin and bearing her signature was prepared, signed and dated by her with testamentary intent and is her legal declaration of her desire with respect to the disposition of a portion of her property at her death. In our opinion it is a valid will and properly admitted to probate.

Notwithstanding our opinion in this repect, we concede that there may be in the matter such element of

doubt or equivocation that reasoning minds might disagree with us and that, therefore, extrinsic evidence offered in the case both before the register of wills at the hearing on the caveat, and before us on appeal should be considered: Thompson Will, 375 Pa. 193. Appellants contend that (1) on its face the subject paper is clearly only a memoranda, and (2) it cannot be converted from a memoranda into a will except upon evidence which conforms with the two-witness rule. If the first proposition were correct, we agree that the second would follow, but as we have indicated, we disagree with the first.

Kisecker's Estate, 190 Pa. 476, is a leading and oft-quoted case upon this subject. The opinion was written by President Judge Stewart, of Franklin County, and affirmed per curiam by the Supreme Court. We believe that there were two unfortunate incidents in this opinion. Judge Stewart said:

"Without regard to the form, it is always competent to adduce extrinsic, collateral evidence to show that it was written and executed with testamentary intent."

This statement has been very frequently quoted, and in our opinion is not entirely accurate since it overlooks the fact that where there is no testamentary intent derivable from the instrument itself and where in form and character the instrument is inconsistent with testamentary intent, such intent must be proved in accordance with the two-witness rule. That Judge Stewart fully recognized this fact is shown by the following quotation appearing in the next following paragraph of his opinion, and in which quotation the word "inconsistent" was inadvertently used in place of the word "consistent," as hereinafter indicated:

"But an examination of these cases and all others to like effect will show that this rule [two-witness rule] obtains only where no testamentary intent is derivable from the instrument itself, indeed, only in cases where

the nature and form of the instrument are inconsistent with such intent. Under such circumstances, where extrinsic evidence is relied upon exclusively to show that the instrument was intended to operate as a will, it is not difficult to understand why the statutory requirements are held applicable. But where form and language used are entirely [in] consistent* with such intent, under judicial construction, or the intent is fairly derivable from a consideration of the entire instrument, the necessity for two witnesses relates only to the formal execution of the paper."

We believe that this has always been the law of Pennsylvania. In 1815, in Arndt v. Arndt, 1 S. & R. 265, Justice Yeates wrote:

"The mind and intention of a man are to be collected, not only from what he does, but what he says. Acts in themselves may be equivocal, and therefore subject to explanation from attendant circumstances, and declarations of the party."

President Judge Gross of the Orphans' Court of York County, in a very comprehensive, careful and thorough opinion in the Kauffman Will Case, affirmed per curiam by the Supreme Court at 365 Pa. 555, stated the rule as follows:

"But, if, from such an examination, the Court should determine that a real doubt or real ambiguity exists, so that the paper offered for probate might or might not be testamentary, depending upon circumstances, then it has been held on numerous occasions by the Appellate Courts that the document presents an ambiguity which will permit the use of extrinsic evidence in aid of resolving the uncertain character of the paper," 558. In that very interesting case the will which was upheld was as follows: "dear bill i want you to have farm Annie Kauffman."

---

* The word used is "inconsistent", which we believe was an inadvertence or a printer's error.

The latest authority on the subject is Thompson Will, 375 Pa. 193, 197, where the Supreme Court said: "Where, however, such intent is doubtful or equivocal, extrinsic evidence is admissible".

From all the evidence in the case we find the following facts relevant to the issue before us.

Irene W. Conlin was a resident of Cumberland County, Pa., and at the time of her death resided on Trindle Road, Camp Hill, Pa. Her husband, George E. Conlin, died on October 27, 1952. On November 6, 1952, James W. Reynolds, Esq., of the firm of Shelley & Reynolds, Harrisburg, visited Mrs. Conlin at her home for the purpose of discussing the settlement of her husband's estate. During this conference Mrs. Conlin brought out the subject writing and handed it to Mr. Reynolds, stating that she had written out a will. The persons named above the line under the name Harry Daibler were relatives of her husband, and that the three names below that line were her own relatives. She called Mr. Reynold's attention to the writing vertically along the right-hand edge of the paper, stating that if any of those persons were dead, she did not want them to have any part of her estate. The conversation then reverted to matters in connection with Mr. Conlin's estate, and near the end of their conference, when Mr. Reynolds asked to see the paper again, Mrs. Conlin stated that she had a headache or was tired, or something to that effect, and kept the paper.

On November 9, 1952, in the forenoon, Mrs. Conlin was found by Mrs. Everett, a house companion, lying under a car in the garage at her residence with the engine running. She got up from that position, entered the house, and undertook to take some medicine, and when Mrs. Everett tried to restrain her, she ran out the door. About noon of that day Mrs. Conlin was found in a field near her home and taken to the hos-

pital. She died that afternoon from suffocation brought on by corrosive powder in her esophagus and upper respiratory passage. It has been stipulated that her death was by suicide. Mr. Reynolds was called to the home and arrived there at about 4 o'clock in the afternoon of November 9, 1952, and was shown an envelope containing the disputed writing lying near the foot of Mrs. Conlin's bed, together with her pocketbook containing her billfold, safe deposit box keys, and certain other items. These items were not present on the bed when it was made up by Mrs. Conlin's house companion that morning, and were first observed after Mrs. Conlin was taken to the hospital, and about 2:30 p.m. We are of the opinion that the evidence supports the finding that Mrs. Conlin laid this writing and pocketbook and keys out on her bed so that they would be immediately found following her death, and that this supports the conclusion that she intended the writing as her last will.

Mrs. Conlin was survived by three first cousins, Mildred M. Williams and Irene E. Williams, who oppose the subject will, and Louis G. Weinmann. She was on very friendly terms with the two Misses Williams, and during most of her lifetime had a close relationship with them. Lois Spangler, Mary Graham, and Woodrow Weinmann, named in the subject writing, are children of Louis G. Weinmann, and thus second cousins of the decedent.

In Tozer, Sr., et al. v. Jackson et al., 164 Pa. 373, one James Rogers committed suicide in his own bedroom. The disputed paper was as follows:

"High James Rogers do give to John Jackson Sr., my property known as Pen argyl Hotel and the land adjoining in Pen argyl in Northampton County P. A. James Rogers."

This paper was found in an envelope lying on the top of a trunk which stood on the floor at the foot of

the bed. The court was of the opinion that the fact that the deceased had so conspicuously exposed the paper where it could readily be seen, and then destroyed his life, were circumstances consistent only with the theory that it was his purpose and intent that the gift contained in the writing should become effective upon his death, and it was therefore upheld as his last will. In Hengen's Estate, 337 Pa. 547, it was noted that decedent had placed the paper where it would certainly be discovered after death, and this circumstance was given weight in establishing it as her will.

Appellants argue that the paper cannot be a will because it disposes of only a portion of decedent's property and because it omits any gift to her two first cousins, Mildred Williams and Irene Williams. We do not think there is merit in either of these arguments. It is our understanding that the first cousins are the nearest heirs, and the residue of the property not passing under the will will go to the first cousins as next of kin. We think it perfectly natural for Mrs. Conlin to have desired to make some gift to her husband's relatives. We find nothing inconsistent with this in the fact that she did not desire to feed her husband's relatives immediately after his funeral, as testified to by Miss Mildred M. Williams.

Appellants argued that the testimony of Attorney Reynolds to the effect that Mrs. Conlin has said to him that she had written out a will is inadmissible as hearsay. We do not agree: Wenz's Estate, 345 Pa. 393. We think it is corroborative of the other circumstances of the case: Young Estate, 347 Pa. 457. However, we may say that our conclusion in this case is not based upon that testimony and would have been the same without it.

Counsel for appellants argue that it is essential to the probate of this document as a will that it be shown by the competent testimony of two witnesses that it

was executed by decedent with testamentary intent. As hereinbefore pointed out, this rule applies at all times to the execution of a will, but applies otherwise "only where no testamentary intent is derivable from the instrument itself, indeed, only in cases where the nature and form of the instrument are inconsistent with such intent": Gibson's Estate, 128 Pa. Superior Ct. 44, 50, quoting Kisecker's Estate, supra. The Wills Act of 1947 (20 PS §180.4) provides that no will shall be valid unless proved by the oaths or affirmations of two competent witnesses. In the year 1820, in the case of Hock against Hock, 6 S. & R. 47, Justice Gibson said:

"Proof of execution must be made by two witnesses, each of whom must separately depose to all facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of but one."

In the present case it is agreed by all parties in interest that the subject paper was signed by Mrs. Conlin. The issue raised in this proceeding is not to the execution of the paper, but to its character. It therefore is the duty of the court to examine the paper, and on the paper alone determine as a matter of law whether or not it shows testamentary intent with reasonable certainty. If such intent is satisfactorily revealed, the paper should be probated as a will. If, from such examination, the court determines that a real doubt or real ambiguity exists so that the paper might be or might not be testamentary, depending upon circumstances, then it is permissible to use extrinsic evidence in aid of resolving the uncertain character of the paper: Kauffman Will, 365 Pa. 555, Hutton (Wills in Pa.), page 178. As will be illustrated by reference to the following cases, it is only where the nature and form of the instrument are inconsistent with testamentary intent that the two-witness rule applies. In Sunday's Estate, 167 Pa. 30, the attempt was to con-

strue certain promissory judgment confession notes as codicils to a will. The court said:

"The writings themselves containing none of the features of a testamentary act, extrinsic evidence has been resorted to by the proponents to show that, while not in form testamentary, they were executed by the decedent with the intention that they shall operate only after his decease, and as codicils to his will."

In Scott's Estate (No. 1), 147 Pa. 89, the subject paper was a letter from decedent to his attorney in which he said:

"Dear sir: Will you kindly at your earliest convenience cause a will to be made for me:" and then proceeded to outline the provisions which he desired. Obviously, on its face such a letter is not a will. As a practical matter decedent might well have changed his mind in the interval of time between the writing of the letter and the drafting and signing of a will pursuant to that letter. The court there held that the two-witness rule did apply. Willing's Estate, 212 Pa. 136, is very similar in that the proposed paper was a letter by decedent to his attorney. The distinction between those cases and the present one seems perfectly clear.

We are of the opinion that the writing here admitted to probate as the last will and testament of Irene W. Conlin on its face shows testamentary intent and is a legal declaration of her intentions which she willed to be performed after her death.

We are of the opinion that the register of wills acted within the scope of his authority and committed no reversible error in appointing Capital Bank and Trust Company as administrator, c. t. a., in the estate of Irene W. Conlin, deceased. In his adjudication the register properly decided that matters of distribution were for the court and that his authority was limited to matters of probate, and accordingly appointed Capi-

tal Bank and Trust Company as a "fit person" to administer the estate. There were antagonisms and differences of opinion among the heirs at law. Two of the first cousins opposed the probate of the will, while the third supported its probate. Capital Bank and Trust Company was the banking institution patronized by both Mr. and Mrs. Conlin and was in the course of settling the estate of the husband of decedent. Much of the property was in joint names, they had joint bank accounts, and a joint safe deposit box. Mr. and Mrs. Conlin died within a period of less than two weeks of each other. Questions of ownership and taxation were very important in the settlement of the two estates. There were obvious advantages in having one institution settle both estates.

And now, April 8, 1954, at 11:15 a.m., the appeal of Mildred M. Williams from the action of the register of wills in probating the disputed paper as the last will and testament of Irene W. Conlin, deceased, and appointing Capital Bank and Trust Company as administrator, c. t. a., in the estate of Irene W. Conlin, deceased, is dismissed. Costs shall be paid by appellant.