## Wenz's Estate.

Argued September 30, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Kenneth G. Jackson,* with him *Charles J. Spinelli, John E. Evans, Sr.,* of *Evans, Evans & Spinelli, William C. O'Neil* and *Thorp, Bostwick, Reed & Armstrong,* for appellants.

*Ralph C. Davis* and *Harry V. Bair,* for appellee, were not heard.

OPINION BY MR. JUSTICE MAXEY, November 23, 1942:
This is an appeal from the decree of the Orphans' Court of Allegheny County dismissing an appeal from the probate of a writing offered as a will. Fred P. Wenz, the decedent, owned a fractional interest in certain gas wells in Ohio, the production of which was being sold to a fuel company. Agents were appointed by the owners

of the fractional interests to receive payments for the gas and distribute the same among the owners. One of these agents visited the decedent, who was in a hospital, and requested written instructions and authority in case of decedent's death to deduct the decedent's pro rata share of expenses and taxes from the receipts. The decedent then wrote the following:

"Pittsburgh, Pa.
Aug. 22, '41.

Mr. Karl Knapp,
Trustee

In case of my death without having made a will it is my wish and desire that all money derived from Licking Co. Gas wells, and my Pro-rata share of any expenses and taxes are deducted, be paid to

Mrs. Anna M. Conroy     1450
Chartiers Ave., McKees Rocks, Pa.
(Signed)   FRED P. WENZ."

The decedent died seven days later, unmarried, leaving to survive him as his heirs at law two sisters and a minor nephew, under the guardianship of the latter's father. Wenz left a personal estate, exclusive of the portion of the estate subject to this controversy, of $30,102.86. At the time of his death there had accumulated in the hands of the trustee of the fund from the gas wells the sum of $222.28.[1]

The opponents of the probate of the above writing say that the decedent did not intend it to operate either as a will or as a testamentary gift or disposition, and they contend that this case is ruled by *Tyson's Est.*, 336 Pa. 497, 9 A.2d 733. In that case this court held that a letter from decedent to his sister saying: "I am making out my will leaving securities to you.", did not constitute a will. There the decedent was obviously re-

---

[1] Presumably further sums would be added to this fund in the future. There is a certificate that the amount in controversy in this case is in excess of $2,500, exclusive of costs.

ferring to *another* paper as his will, and no such paper was ever found.

In the instant case the paper probated was testamentary in character. The fact that it was addressed to "Karl Knapp, Trustee" is of no materiality. "The mere fact that the will was in the form of a letter does not affect the result: *Knox's Est.*, 131 Pa. 220; *Scott's Est.*, 147 Pa. 89.": *Davis's Est.*, 275 Pa. 126, 129, 118 A. 645.

Appellants argue with considerable plausibility that the letter in question "was merely a direction to the agent as such, and was intended for his, the agent's, guidance and protection.", but appellants concede that "when the decedent died, the agency and all further authority of the agent to act thereunder ended." Appellants also argue that "when Knapp heard the decedent was in the hospital, he visited him there and attempted to obtain directions or authority for continuing the deduction of decedent's pro rata share of taxes and expenses after decedent's death." The weakness of that argument is that the decedent in the paper he signed went further than merely authorizing the deductions of his pro rata share of taxes and expenses and declared that after these deductions were made that the balance of the gas wells royalties should "in case of" his "death without having made a will . . . be paid to Mrs. Anna M. Conroy." It is true that the phrase "without having made a will" tends to support appellants' contention that the paper in question was not a will, but it is a legitimate inference from all the circumstances that what decedent meant by that phrase was this: "without making a formal will disposing of all of my property". Knapp was a mere collector of these royalties and it is conceded that his duty was "to distribute the same among the parties in interest". Wenz in the challenged paper gave Knapp explicit directions as to what he should do with the net proceeds of Wenz's share of these royalties *after Wenz's death* and that direction was to pay these proceeds to Mrs. Conroy.

Wenz made Mrs. Conroy "a party in interest" as soon as he should die.

It is also true, as appellants contend, that "the fact that this decedent sought to protect his agent's authority beyond decedent's lifetime, and failed in that attempt, does not justify the lower court's conclusion that a will was intended." The conclusion challenged is not justified *by that fact alone.* The fact that this paper is in law either a will in respect to the decedent's share of the gas royalties or it is nothing is a fact which with other facts in the case was proper for the court's consideration in determining whether or not it *was* a will. In *McCune's Est.,* 265 Pa. 523, 109 A. 156, this court said in substance that the test of whether or not a paper signed by a decedent was his will is: Was it "intended as a post-humous destination of the maker's property?" Wenz placed no limitation on Mrs. Conroy's possession of this share of his property once these proceeds were paid to her after his death. He did not designate her as a custodian or agent, nor did he direct that she should turn the royalties over to an administrator of his estate after his death. He did not make her a mere conduit of these proceeds. He could easily have designated Mrs. Conroy as a mere holder of these proceeds for the benefit of his estate, after his death, but he did *not* do so, and that fact is of legal significance. Wenz was approaching death and it may be inferred that he contemplated it when he executed this paper.

A paper to be accepted as a will must be not only testamentary in form but it must be signed by a decedent with a testamentary intent. "The animus testandi is an indispensable ingredient" of a will: *Stein's Lessee v. North,* 3 Yeates' Reports 324. As proof of the absence of this ingredient, appellants cite the testimony of Mrs. Agnes Myers, a nurse at the hospital, who secured the pen and paper at Knapp's request, which Wenz used in writing the paper now before us. She testified that during the writing of the paper Wenz declared that "he did not have a will and that he did not intend to

make a will at this time". Mrs. Myers witnessed decedent's signature but later tore her signature from the paper.

We do not agree with appellee that this testimony was incompetent. Whether or not an act done by a person is a jural act often depends on the mental state which accompanies or incites it and that state may be shown by that person's contemporaneous utterance. What is said when a thing is done is often revelatory of the character of that thing, as we pointed out in *Eaton v. N. Y. Life Ins. Co.*, 315 Pa. 68, 78, 172 A. 121. "The act itself being admissible, whatever accompanies it and serves to explain its character is relevant and admissible also.": per COLERIDGE, J., in *Wright v. Tatham*, 5 Cl. & F. 670, 693. As to the proof of attendant or extrinsic circumstances when there is a question of the nature of a paper offered as testamentary, see Page on Wills (3rd ed.), Vol. 1, sec. 59, p. 137, and *Sunday's Est.*, 167 Pa. 30, 31 A. 363. See also *Fellbush v. Fellbush*, 216 Pa. 141, 65 A. 28.

The evidence of Mrs. Myers was considered by the court trying this case. The weight and credibility of her testimony [2] was for the trier's determination. He, President Judge TRIMBLE, said: "Despite her testimony, his [Wenz's] writing clearly shows a present testamentary disposition, complete of itself, dependent upon no other paper for fulfillment."

The respective positions of both the proponents and the opponents of the probate of this paper find some support in this record. The case is admittedly a close one, but the record does not require a holding by us that the court below erred in dismissing the exceptions and affirming the decree of the trial judge, who dismissed the appeal from the probate of this paper.

The decree is affirmed at appellants' cost.

---

[2] The fact that this witness "later tore her signature" from this paper tends to indicate that she had some animus against its probate as a will.