## Thompson Will.

194

Argued October 7, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Robert L. Orr*, with him *Leonard L. Ewing* and *Reed, Ewing & Ray*, for appellant.
lee.

*George Hardy Rowley*, with him *Whiteman, Voorhies, Dilley & Keck* and *Joseph A. Tritschler*, for appel-

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 9, 1953:

In an appeal from a decree of the Orphans' Court of Beaver County affirming decree of the register of

wills probating a paper writing purporting to be the will of decedent, the sole question is whether or not such writing is testamentary in character. The paper reads:

"July 7, 1949

"Dear Catherine:

"Just a few lines to let you know I am starting to Monaca, and I was very much pleased with the vacation. Catherine, I want you to know you are to get *all* I have when I die. Tell Mary Agnes and David that Uncle George said hello and give them a big hug and a kiss for me.

"I remain as ever

Uncle George Thompson."

George Thompson, the decedent, died November 8, 1949, unmarried and without issue. Surviving him as next of kin were a brother, James Thompson, the appellant, and nephews and nieces, of whom Catherine Grimes Nicholson, appellee, was one. The writing was probated on November 22, 1949; the administrator *cum testamento annexo* filed its account, which was audited by the orphans' court and a definitive decree of distribution was entered December 26, 1950, pursuant to which the balance of $14,571.63 was ordered paid and distributed. On November 19, 1951, three days prior to the expiration of the applicable two year period of limitation under the Register of Wills Act of June 7, 1917, P. L. 415, Sec. 21 [a], 20 PS 2005, appellant filed his appeal. A hearing was held in the orphans' court. There were no objections to the admissions of evidence which stands uncontradicted. As the facts are undisputed, the testamentary character of the instrument is a question of law for the court: *Kimmel's Estate*, 278 Pa. 435, 123 A. 405.

The identities of "Uncle George Thompson" (the signer of the document), of Catherine Nicholson

("Dear Catherine" named in the paper) and of "Mary Agnes and David" (children of Catherine), were established and over which there is no dispute. The pertinent facts, found by the hearing judge, and not controverted, are succinctly stated in his opinion: " . . . Mrs. Nicholson [Catherine] was born in Monaca, Pa., and for approximately seven years lived there at 1119 Pennsylvania Avenue with her grandmother, grandfather and the decedent, her uncle, George Thompson, and then moved to New Brighton and during the subsequent years continued to be in close contact and friendly relationship with her uncle. After the death of Mrs. Nicholson's grandmother and grandfather decedent continued to live in the Monaca property; for a period of time prior to his death he had a housekeeper, during the last four or five years of his life he lived alone. Through the years decedent visited with Mrs. Nicholson and her family at their home in Appollo, Grove City and Greenville, particularly in the summer months. In June of 1949 decedent visited them at Greenville, plans were then discussed for selling the home, etc., in Monaca and his residing permanently with his niece. In the first week of July, 1949, the Nicholsons having made plans and reservations for their vacation and Mr. Thompson declining to go with them, they departed while he remained at their home for several days and then returned to Monaca. Upon the Nicholsons returning home from vacation the letter in question was found by Dr. Nicholson and his wife on a table in the living room beside a planter lamp which Mrs. Nicholson purchased with money which decedent had given her for Christmas.

"No other will of decedent was found . . . . It also appears from the testimony of John Auth that two or three days before decedent's sudden death he discussed with him the matter of whether or not he had

a will and his affairs provided for, at which time the decedent said that he did . . . His testimony in this respect was as follows:

'A. Well, I asked him, I says, "George, you are a pretty sick man." I says, "You know, it won't make you die any quicker, but everybody should have a will." I says, "Now, I don't know what you have got, but I imagine you have—you have got that property, and, I suppose, you have some in the bank." He says, "Yes, I do." I says, "Do you have things fixed?" He says, "Yes, my niece," Mrs. Nicholson, "Kathy", I think he called her, he says, "she has the papers." ' "

Although the parol extrinsic testimony was admitted without objection, we are required to consider its effect upon the question whether or not the probated paper constitutes the last will and testament of decedent. Where a writing by its terms clearly constitutes a testamentary disposition, evidence of a contrary intent is inadmissible: *Lillibridge's Estate,* 221 Pa. 5, 69 A. 1121; *Gibson's Estate,* 128 Pa. Superior Ct. 44, 193 A. 302. Conversely, where a writing is obviously *not* a will, evidence of testamentary intent is not admissible: *McCune's Estate,* 265 Pa. 523, 109 A. 156; *O'Connor's Estate,* 273 Pa. 391, 117 A. 61. Where, however, such intent is doubtful or equivocal, extrinsic evidence is admissible: *O'Connor's Estate,* supra; *Smith's Estate,* 308 Pa. 265, 162 A. 214; *McKean Estate,* 159 Pa. Superior Ct. 409, 48 A. 2d 74.

The questioned paper is undoubtedly equivocal. Standing alone the words "Catherine, I want you to know you are to get *all* I have when I die" are dispositive. Since such gift is stated to become effective "when I die", the words are testamentary in character. But such words are contained in and are part of an informal letter written by decedent wherein he expresses his pleasure with his vacation (spent at Cath-

erine's home) and are coupled with an expression of affection for Catherine's children. While the informal character of a paper is an *element* in determining whether or not it was intended to be testamentary, this becomes unimportant if it be shown that decedent thereby intended to make a testamentary gift. Thus in *Kimmel's Estate*, 278 Pa. 435, 123 A. 405, in a letter to a member of his family replete with advice concerning pickling pork, weather predictions etc., decedent wrote (p. 437): ". . . if enny thing happens (money, bonds, savings stamps and home) goes to George Darl & Irvin Kepp this letter lock it up it may help you out". The letter was probated as decedent's will. In *Kauffman Will*, 365 Pa. 555, 76 A. 2d 414, the writing read: " 'dear bill i want you to have farm Annie Kauffman' ". Extrinsic evidence established that this writing was intended to be testamentary in character and was probatable. We have repeatedly held that informal letters addressed to the beneficiary may be testamentary: *Fosselman v. Elder*, 98 Pa. 159; *Knox's Estate*, 131 Pa. 220, 18 A. 1021; *Davis's Estate*, 275 Pa. 126, 118 A. 645; *Smith's Estate*, 308 Pa. 265, 162 A. 214.

There are many elements in the uncontradicted extrinsic testimony which indicate that decedent *intended* this informal letter to be testamentary. This niece (appellee) in her early childhood lived in decedent's home as a member of the family; a close and cordial friendly relation between her and decedent continued until decedent's death; decedent was not friendly with his brother (the appellant) who lived in Toledo, Ohio; there was no close association with decedent's other nephews and nieces; appellee and decedent frequently visited each other and while at appellee's home decedent wrote and left for his niece the questioned document; no formal will, or other dispositive writing was

found; any doubt as to whether decedent regarded the probated paper as his will is dissipated by the testimony of decedent's friend, John Auth. He testified that when he asked decedent whether or not he had a will, decedent answered "not exactly" but that "[he] just fixed things up" and also said "Yes, my niece, Kathy, she has the papers". The witness suggested that to save trouble decedent ought to go to a lawyer to draw a will but decedent said he would do that after he got "to feeling better". If the questioned writing is in legal effect a will, understanding of a testator to the contrary is immaterial: *Turner v. Scott*, 51 Pa. 126; *Diehl's Estate*, 11 Pa. Superior Ct. 293; *Gibson's Estate*, 128 Pa. Superior Ct. 44, 193 A. 302. In *Wenz's Estate*, 345 Pa. 393, 29 A. 2d 13, the words were: "In case of my death *without having made a will* it is my wish and desire, etc." (Italics supplied) It was held that her expression of "wish and desire", in the light of extrinsic evidence, constituted the paper a valid will. See also *Zell's Estate*, 329 Pa. 312, 198 A. 76. While doubtless decedent may have intended to consult a lawyer and have a formal will professionally drawn, he clearly indicated in his conversation with Mr. Auth that Catherine Nicholson was the sole object of his bounty; that he had "just fixed things up", and significantly stated that Mrs. Nicholson "has the papers". The testimony shows that the questioned paper was the only one in appellee's possession.

We agree with the learned court below, in its well considered opinion, that the probated paper in question, in the light of the extrinsic testimony, constitutes the last will and testament of decedent. The appeal from probate was properly dismissed.

Decree affirmed, at cost of appellant.