389 A.2d 83

In re ESTATE of John W. RITCHIE, Deceased.

Appeal of Betty M. BRISSON.

Supreme Court of Pennsylvania.

Argued March 9, 1978.

Decided July 14, 1978.

James A. Meyer, St. Mary's, for appellant.

William T. Pierce, Indiana, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

This is an appeal from a decree of the Orphans' Court Division of the Court of Common Pleas of Indiana County, affirming the admission to probate of a disputed instrument dated March 2, 1974 and purported to be the Last Will and Testament of John W. Ritchie.

John W. Ritchie died April 20, 1974, a resident of Indiana County, Pennsylvania. On May 17, 1974, the Register of

Wills of Indiana County admitted to probate a writing dated March 2, 1974, alleged to be John W. Ritchie's Last Will and Testament. Letters Testamentary were granted to Aileen Stake, Executrix. Appellant, Betty M. Brisson, filed an appeal from the Register's Decree to the Orphans' Court of Indiana County. Following submission of briefs and a non-jury hearing, the court affirmed this instrument's admission to probate and the granting of Letters Testamentary to Aileen Stake. Betty M. Brisson filed an appeal to this Court.

The decedent, John W. Ritchie, left to survive him as his only heirs at law Ina Ritchie, his wife, from whom he had been separated from 1960 to the time of his death; and Aileen Stake and Jane Furgeson, his daughters. All were adults at the time of decedent's death. Betty M. Brisson, appellant, had kept company with John W. Ritchie since 1945, and from 1960 to the date of his death had resided with Mr. Ritchie on his farm in West Mahoning Township. In addition, Betty M. Brisson acted as parts manager for a car dealership in Homer City, Pennsylvania, owned by the decedent until the end of 1972.

Appellant, Betty M. Brisson, claims to be a party in interest by virtue of another written instrument alleged to be the holographic last will and testament of John W. Ritchie, dated June 28, 1961. In the 1961 instrument, appellant was the named devisee of the decedent's real estate, a farm containing 61 acres more or less. This instrument was found after decedent's death in his personal safe at his residence located on the decedent's farm. This writing, which was on a printed will form, is entirely in the handwriting of John W. Ritchie except for the printed portion thereof, and reads as follows:

"I, John W. Ritchie, *of* 30 West Elm Street, Homer City, *County of* Indiana, *and State of* Pennsylvania, *being of sound mind, memory and understanding, do make and publish this my last Will and Testament, hereby revoking*

*and making void all former Wills by me at any time heretofore made.*

To Whom It May Concern, do here bye with my own free will and testament do will said property to Betty M. Brisson of 30 West Elm Street, Homer City, Pa. this property being in West Mahoning Twp. Indiana Co. being located on McCormick Road between Smicksburg and McCormick Slatw and Georgeville along little Mahoning Creek the acreage 61 acres more or less the lewis farm on West also Goverment, dam Pond on south West Georg Roush land on East side Emma Elkin land on North side. Deed no—5001—up on my Death this Betty M. Brisson shall become sole owner of this said farm with no Encumbrance the Z T Ritchey et ux to S A. Ritchie Smicksburg, Pa. # 2

John W. Ritchie"

The instrument was notarized on the reverse side, albeit misplaced in the space provided for testator's signature.

The later instrument, admitted to probate, also allegedly disposes of the 61 acre farm, thereby revoking the prior instrument by inconsistency. This instrument was written on paper from a memorandum pad bearing "New Super Kool—Seal" advertising, and was in the possession of Aileen Stake at the time of decedent's death. The probated instrument reads as follows:

"For Aileen and Jane
Executors

To Whom It May Concern

| | |
|---|---|
| tractor MF | guns |
| lawn mower cub | 300 savage |
| boat & motor | 410 gauge |
| carriage trailer | 22 single |
| cachman trailer | 22 Revolver |
| Farm 61 acres | 12 g. shotgun |
| tools & garage equipment | Chev |
| shall be divided 50/50 | Truck |
| all assets 50/50 | |

John W. Ritchie
3/2/74 "

It is agreed by all parties that "For Aileen & Jane Executors" and the date were not written by decedent, but by Glenn Stake, husband of Aileen.

The sole issue before us is whether the writing dated March 2, 1974 and admitted to probate as the will of John W. Ritchie was executed with testamentary intent and was intended to dispose of his property after his death.

The court found that the testamentary character of this paper was ambiguous, and admitted extrinsic evidence to aid in its determination of whether the form and language of the paper showed testamentary intent with reasonable certainty. *See In Re Kauffman's Estate,* 365 Pa. 555, 76 A.2d 414 (1950). Based upon the instrument itself and the testimony of its proponents the court concluded that this writing was testamentary in character. We do not feel that the evidence supports that conclusion.

The extrinsic evidence was admitted without objection, and admission of that evidence is therefore not at issue before us. Moreover, we are required to consider the effect of that evidence in reviewing the question of whether or not the probated paper constituted the last will and testament of the decedent. *Appeal of Thompson,* 375 Pa. 193, 197, 100 A.2d 69, 71 (1953).

The testimony of Glenn D. Stake, husband of Aileen Stake and son-in-law of the decedent, was to the effect that early in March of 1974, the decedent came to the Stake home to have lunch with Aileen and himself. The three discussed the disposition of decedent's property at his death. Decedent indicated that he wanted to divide his property 50/50 between Aileen and Jane, stating that "If something happens to me that is what I want carried out". The decedent asked Glenn Stake to take care of it in case something happened to him, but Mr. Stake declined and suggested that Jane and Aileen handle it, and decedent indicated his agreement. Mr. Stake testified that at this point the decedent asked Mr. Stake to write "For Aileen and Jane, Executors" at the top of the Kool-Seal paper on which he had been writing, and Mr. Stake testified that this was done, before the decedent signed the paper and at decedent's direction.

After he had written that paper, decedent directed Aileen to make various lists of his property as he directed on five (5) additional Kool-Seal paint pad pages. All of these were signed at the bottom by the decedent, but none were offered for probate. The appellees agree that these were merely lists of the assets of the decedent, for informational purposes only. The paper admitted to probate and the other five inventory sheets were all dated March 2, 1974, and the date was added to the writings by Glenn Stake. The testimony is confusing as to whether or not the papers were actually prepared on March 2, 1974. However, no one contests that the paper admitted to probate was prepared on or about the date of March 2, 1974, a date substantially later than June 28, 1961, the date of the other will.

Mrs. Stake testified that during the course of the preparation of the paper admitted to probate, the decedent stated "that he was sorry for the way he had treated us for the last few years and wanted to make some changes; he was going to make a will and do for Jane and I and his grandchildren, which he had not done for many years; and he was sorry for the way things had gone." She further testified that the decedent said that he wanted her and Jane to have the farm.

Appellant, Betty M. Brisson, testified to her long relationship with the decedent. She said that when the decedent was in the hospital, suffering from a stroke, he mentioned leaving the farm to her, as he had on previous occasions. She further testified that the 1961 instrument was found in the decedent's safe at the farm, after his death. Mrs. Brisson testified as to the comings and goings of the decedent at or about March 2, 1974 and stated that the decedent was at home on the farm on that date, which testimony was corroborated in part by Jay Lawson, decedent's brother-in-law and a visitor to the farm on that date. As stated before, it is not certain that the instrument admitted to probate was actually prepared on that date, even though that date appears on the instrument.

The final witness was Ina Ritchie, wife of the decedent, who testified that during the last six (6) months of his life

decedent frequently came to Homer City visiting her home and the home of their daughter Aileen, and that on one occasion he stated that "he wanted the girls to have the farm, he was going to fix it up that way."

On behalf of the appellant, it is argued that the paper admitted to probate is a memorandum addressed to Aileen and Jane rather than a testamentary document; that it is written as a listing of assets; and that there are no dispositive provisions in the writing. Appellant argues that the writing does not indicate to whom the property is to go, since the paper is addressed to Aileen and Jane as executors and not as legatees. Appellant further contends that because they were not written by the decedent, the words, "For Aileen and Jane, Executors," may not be considered a part of his alleged will and must be presumed to be an addition made after the testator signed the paper and without his knowledge.

We will consider "For Aileen and Jane, Executors" as a part of this writing since it was so found by the trier of fact. Credibility is for the hearing judge who has seen and heard the witnesses, and the record will be reviewed by us in the light most favorable to the appellees. *Estate of Zeil,* 467 Pa. 531, 359 A.2d 728 (1976).

The form and language of a writing are no more than factors to be considered and are not determinative of whether the writing is a will, so that this informal instrument may be a fully effective will if the language suffices to show testamentary intent. *See Estate of Sedmak,* 467 Pa. 379, 357 A.2d 142 (1976), and the cases cited therein. Testamentary intent, however, is an indispensable element for the finding of a will. The writing must be dispositive in character, and the disposition must be intended to take effect after the testator's death. *See Kauffman's Estate, supra,* and cases and authorities cited therein.

It is appellant's contention that this writing is neither dispositive nor testamentary, but merely a list of assets prepared for his daughters, whom he may have intended to

name as executors when his will was drawn, for their convenience in gathering together the assets in his estate upon his death.

■ There is no language in the instrument which is testamentary in nature except the word "Executors," inserted by Glenn Stake. Use of the word, however, does not evidence a testamentary intent absent further indication that decedent was thereby either appointing his executors or naming them as his beneficiaries. In fact, "For Aileen & Jane Executors," followed by a bare listing of assets without dispositive language, supports appellant's theory that this was a list addressed to his daughters for their future reference in settling his estate, not an attempted testamentary disposition.

The trial court concluded that "For Aileen and Jane, Executors" is dispositive in nature because of the "Key word" "For". The court concluded that the decedent was thereby naming Aileen and Jane, his executors, as his beneficiaries.

The extrinsic evidence offered by appellees themselves, proponents below, refutes this interpretation.

■ Their testimony was that this phrase was added by Glenn Stake, at the decedent's direction, during a conversation solely concerned with who would be executor of his estate. Although the word "For" might have dispositive significance if coupled with extrinsic evidence that it was inserted pursuant to decedent's declarations concerning disposition of his property, this simply is not the case. Both Aileen and Glenn Stake testified that the decedent asked Glenn to be his executor, he refused and suggested the daughters; and Glenn then added these words to the top of the paper upon which the decedent was writing. This phrase, therefore, even most liberally construed, can be no more than appointment of executors. It cannot be taken to indicate the beneficiaries of a will.

■ Appellees argue that this language coupled with the later phrases "50/50" and "all assets 50/50" show he

wanted Aileen and Jane each to receive one-half of his estate. This may be a reasonable construction. However, unless it is shown that this instrument was intended to be his will, and not a listing for future reference or a memorandum for his use in having a will drafted, the clarity of his scheme is immaterial. What is required for a valid will is the intent to make that writing, not a future writing, a testamentary disposition. Instructions and memoranda for use in drawing a will do not show this requisite intent. *Estate of Moore,* 443 Pa. 477, 277 A.2d 825 (1971); *Estate of Richards,* 439 Pa. 5, 264 A.2d 658 (1970). The appearance of this instrument, the starkness of the language (i. e. "all assets 50/50") without use of any dispositive terms, and the simple form used, listing asset below asset, all indicate that this is a memorandum rather than a will. Although form is not a determinative factor, it is an element which may be considered. *Kaufmann's Estate, supra.* The decedent had previously executed a will which, although unsophisticated, indicates some knowledge of the customary form and style of such a document. All such indications are lacking here.

Not only does this writing strongly suggest on its face that it is a mere memorandum for preparation of a will, or a simple listing of assets, but once again the testimony of appellees belies their position. Aileen Stake testified as follows:

"He said to write it until he could get it fixed up better by a lawyer."

"Well that was just his assets until he could get things fixed up better. It is the same as a will. He told me he was going to get a lawyer and get everything straightened out."

Her husband testified that:

"He told Aileen to get the paper; he wanted to write the stuff down that he owned."

This Court has said that

"if a further or additional act or writing is contemplated by an alleged testatrix in order to make her (or his) will or codicil, the writing is *nontestamentary* in nature." (Em-

phasis in original.) *Estate of Moore, supra,* 443 Pa. at 479, 277 A.2d at 826; *Estate of Richards, supra.*

The extrinsic evidence of the appellees indicates that this was a list or memorandum contemplating a will to be drawn in the future.

At the time the decedent wrote this paper, five similar writings were done by Aileen Stake under decedent's direction. All enumerate decedent's assets in list form; all are signed by the decedent at the end. This writing differs only in the heading "For Aileen & Jane, Executors", which we have already determined has no dispositive significance even if, as found by the court, it was added at the decedent's direction and prior to his signing of the instrument. Appellees admit that the other five writings were merely lists of assets dictated by the decedent, and therefore appellees did not attempt probate of any of the other signed notations. When six very similar writings are prepared at the same time, the character of the other five may point to the character of the one offered for probate. There is very little upon which the five papers conceded not to be wills can be distinguished from the one purported to be a will, except a phrase admittedly not added by the decedent himself.

Moreover, as indicated above, the decedent had at least an unsophisticated knowledge of how to write a will. The 1961 will, although rough in form, stands in sharp contrast to the paper admitted to probate. The decedent used testamentary and dispositive language, clearly named his beneficiary and described in some detail the property to be passed. Furthermore, the decedent was a businessman and had some knowledge of the significance of his will. The man who fully wrote out the 1961 will, had it notarized and kept it locked in his safe would be unlikely to think that he had executed a valid, revoking will merely by jotting down his assets in a list format, signing his name, and leaving the papers—without any instructions for either their use or their safekeeping—at his daughter's home. Although the validity of the former will is not here in issue, its form and the formality of its execution are part of the facts in evidence

from which we may draw the reasonable inference that, by contrast, the probated writing was not intended to be a will.

There are other portions of appellees' testimony which fail to sustain their contention that this writing was a will, and instead, tend to show that it was not intended as a testamentary disposition. Among these are the daughter Aileen's statement that "If I had known it would mean this much, I would have gotten a decent piece of paper" and the decedent's wife's testimony that, *after* March 2, 1974 the decedent told her that he was *"going* to fix it" so that the girls would have the farm. (Emphasis ours.)

Upon careful review of the briefs and records, we find that the writing dated March 2, 1974, and admitted to probate as the last will and testament of John W. Ritchie, lacked sufficient testamentary character to be effective as a will. We therefore reverse the decree of the trial court admitting this writing to probate and affirming the grant of Letters Testamentary to Aileen Stake. Each party to pay own costs.

POMEROY, J., filed a dissenting opinion in which O'BRIEN and ROBERTS, JJ., joined.

POMEROY, Justice, dissenting.

The judge of the Orphans' Court division below concluded that a writing prepared by and under the direction of the decedent, John W. Ritchie, evidenced both a testamentary character of the instrument and a testamentary intent of the decedent. The court therefore affirmed the order of the Register of Wills admitting the writing to probate. This Court now reverses on the theory that the holographic instrument involved was no more than a listing of assets from which a will was later to be prepared and that it was lacking in that testamentary character which is an indispensable attribute of a will. While such an interpretation of the document in question and of the evidence in the case may indeed have been a reasonable one for the court of first

instance to adopt, it exceeds the proper scope of appellate review:

> "Our review in these cases is limited to determining whether the findings of fact approved by the court en banc rest on legally competent and sufficient evidence, and whether an error of law has been made or an abuse of discretion committed. *In re Estate of Fickert,* 461 Pa. 653, 337 A.2d 592 (1975); *Protyniak Will,* 427 Pa. 524, 235 A.2d 372 (1967); *Abrams Will,* 419 Pa. 92, 213 A.2d 638 (1965). It is not our task to try the case anew. Credibility of the witnesses is for the hearing judge who has heard and seen them and the record will be reviewed by us in the light most favorable to the appellee. *In re Estate of Fickert, supra,* 461 Pa. at 657, 337 A.2d at 594." *In re Estate of Ziel,* 467 Pa. 531, 536–37, 359 A.2d 728, 731 (1976).

In the case at bar the conclusions of the Orphans' Court were supported by sufficient and competent evidence; this Court should not presume, on the cold record before it, to substitute its own view of the operative facts for that of the trial court. Hence this dissent.

The challenged instrument read as follows:

"For Aileen and Jane
    Executors

To Whom It May Concern

| | |
|---|---|
| tractor MF | guns |
| lawn mower cub | 300 savage |
| boat & motor | 410 gauge |
| carriage trailer | 22 single |
| cachman trailer | 22 Revolver |
| Farm 61 acres | 12 g. shotgun |
| tools & garage equipment | Chev |
|    shall be divided 50/50 | Truck |
|    all assets 50/50 | |

John W. Ritchie
3/2/74 "

The trial court found the writing to be ambiguous and, without objection, admitted extrinsic evidence in order to determine whether the decedent possessed the requisite tes-

tamentary intent at the time of its preparation. *In re Estate of Sedmak*, 467 Pa. 379, 357 A.2d 142 (1976); *Kauffman's Will*, 365 Pa. 555, 76 A.2d 414 (1950). Based upon this extrinsic evidence, the trial court concluded that:

(1) the document was prepared by the decedent on or about March 2, 1974;

(2) the document was in Mr. Ritchie's handwriting except that the words "For Aileen and Jane, Executors" were placed on the document by Glenn Stake, husband of Aileen Stake, at the direction and in the presence of the decedent;

(3) the decedent had repeatedly expressed a desire to atone for the slighting of his family in the past and thus desired that his farm pass to his children;

(4) the use of the words "Executors" and "To Whom it May Concern" evidenced the decedent's desire that the writing was to serve as a disposition of his property in the event of his death;

(5) the use of the words "For Aileen and Jane" and "all assets 50/50", read in conjunction with the decedent's expressed desire to devise his farm to his children, established the requisite testamentary intent.

My reading of the record satisfies me that the trial court was entirely justified in reaching these conclusions.

In short, the trial court properly admitted extrinsic evidence which, read together with the holographic instrument, established a reasonable basis for that court's conclusion that the writing before it was more than a mere listing of assets in contemplation of a later will, but was in fact testamentary. See *Kauffman's Will, supra; Wenz's Estate*, 345 Pa. 393, 29 A.2d 13 (1942); *Scott's Estate (No. 1)*, 147 Pa. 89, 23 A. 212 (1892). I would therefore affirm the decree of the Orphans' Court division.

O'BRIEN and ROBERTS, JJ., join in this dissenting opinion.