J-A13038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF JOSEPH W. PEMBERTON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JERROD DUNKER | : | No. 1567 WDA 2017 |

Appeal from the Order Dated October 11, 2017
in the Court of Common Pleas of Greene County,
Orphans' Court at No(s): 120 OC 2016

BEFORE:  OLSON, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:            **FILED SEPTEMBER 21, 2018**

Jerrod Dunker ("Dunker") appeals from the Order dismissing his Petition for Citation *Sur* Appeal from the Register of Wills, and admitting to probate the April 23, 2016 codicil (the "Codicil") to the will (the "Will") of Joseph W. Pemberton ("Decedent").  We affirm.

In its Opinion, the Orphans' Court set forth the relevant factual background as follows:

> On August 22, 2016, [Decedent] died a resident of Greene County, Pennsylvania.  The Petitioner … is [Dunker], a friend of Decedent.  The Respondent is Richard D. Pemberton [("Pemberton")], brother of Decedent.

> On September 14, 2016, admitted into probate was [the Will], and [the Codicil,] a handwritten document signed by [] Decedent and dated April 23, 2016.  At the time of his death, [] Decedent did not have a wife or any other blood relatives other than [Pemberton].  The Will … left a farm located at 799 Windy Gap Road, Aleppo, Pennsylvania ("Windy Gap") and a 2011 Harley Davidson motorcycle ("Motorcycle") to [Dunker].  All other

property was left to [Pemberton,] and in the event of his death, to [Pemberton's] wife, Barbara Pemberton [("Barbara")].

[The Codicil] changed the testamentary scheme of the [Will] so that all of [] Decedent's property, including Windy Gap[,] [was] left to [Pemberton]. Specifically[,] it consisted of a list of [] Decedent's property, was signed and dated at the bottom by [] Decedent, and contained the words "All for Dick" under all listed property except for "guns," "bike trailer" and three outstanding loans.

[Dunker] subsequently filed a ["]Petition *Sur* Appeal from Register in Probating Will[,"] challenging the [Codicil] being admitted as a codicil. On January 31, 2017, the [Orphans'] Court held an evidentiary hearing on the Petition. The issue in the hearing was the testamentary intent of [] Decedent. There is no dispute that Decedent is the author of the [Codicil].[1] On October 11, 2017, the [Orphans' C]ourt issued its Order and Opinion, finding the [Codicil] valid and enforceable.

Trial Court Opinion, 1/16/18, at 1-2 (pages unnumbered; paragraphs reorganized; footnotes omitted; footnote added). Dunker filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Dunker raises the following questions for our review:

1. Did the [Orphans' C]ourt commit an abuse of discretion and err as a matter of law in failing to correctly apply the law relative to the Pennsylvania Dead Man's Act to the parties' testimony and to [Pemberton's] and [Barbara's] testimony at the hearing in the [Orphans' C]ourt?

2. Did the [Orphans' C]ourt commit an abuse of discretion and err as a matter of law in finding the [Codicil] to be a valid codicil to the [W]ill of [Decedent] dated September 3, 2014?

_____

[1] The parties also agree that the words "All for Dick" were written by Pemberton, rather than Decedent.

Brief for Appellant at 8 (claims reordered).

> Our standard of review of the findings of an Orphans' Court is deferential. When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> As an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion.

*In re Estate of Devoe*, 74 A.3d 264, 267 (Pa. Super. 2013) (quotation marks and citations omitted).

In his first claim, Dunker alleges that the Orphans' Court improperly allowed Pemberton and Barbara to testify, in violation of Pennsylvania's Dead Man's Act. Brief for Appellant at 24-25. Dunker argues that Pemberton and Barbara engaged in a transaction with Decedent, prior to his death, when Decedent prepared the Codicil. *Id.* at 26-28. According to Dunker, that transaction resulted in Pemberton and Barbara having an interest in Decedent's property that is adverse to Decedent, and Dunker represents Decedent's interest. *Id.* at 27-28.

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court

might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

***Crespo v. Hughes***, 167 A.3d 168, 177 (Pa. Super. 2017) (quotation marks and citation omitted).

The Dead Man's Act states, in relevant part, the following:

**§ 5930. Surviving party as witness, in case of death, mental incapacity, etc.**

[W]here any party to a thing or contract in action is dead, … and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased … party, shall be a competent witness to any matter occurring before the death of said party….

42 Pa.C.S.A. § 5930.

"The purpose of this Act is to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent to give testimony thereon favorable to himself and adverse to the decedent, which the latter's representative would be in no position to refute." ***G.J.D. v. Johnson***, 669 A.2d 378, 384 (Pa. Super. 1995) (citation omitted).

For a witness to be disqualified as a witness under the Dead Man's Act, the following must be proven: (1) the deceased must have had an interest in the matter at issue, *i.e.*, an interest in the immediate result of the suit; (2) the interest of the witness must

- 4 -

be adverse;[2] and (3) a right of the deceased must have passed to a party of record who represents the deceased's interest.

***Pagnotti v. Old Forge Bank***, 631 A.2d 1045, 1046 (Pa. Super. 1993)

(citation omitted; footnote added). "[T]he party challenging the competency

of a witness[] has the burden of proving incompetency." ***Id.***

> Several exceptions to the Dead Man's Act are included in the statute, one of which is the *devisavit vel non* exception. In ***Dalbey's Estate***, … 192 A. 129 ([Pa.] 1937), our Supreme Court stated that the *devisavit vel non* exception:
>
>> renders competent all witnesses in disputes involving the testamentary disposition of property regardless of any interest possessed by them in the particular decedent's property. This rule is in keeping with the modern tendency to admit all testimony having a direct bearing on issues involved, notwithstanding the witness' interest, which reflects only on his credibility. This is especially true where other evidence is at times unavailable, as is frequently the case in litigation of this character.
>
>> The Dead Man's Act renders the witness' testimony competent where the controversy over decedent's property is between parties respectively claiming such property by devolution on the death of the owner. The definition of the term devolution includes the transfer of a decedent's property both by operation of law and by will.

***Pagnotti***, 631 A.2d at 1046-47 (quotation marks and citations omitted;

italicization added).

---

[2] "The true test for determining an interest which will disqualify a witness under the [Dead Man's] Act is whether he will gain or lose, as the direct legal operation and effect of the judgment rendered." ***In re Estate of Hall***, 535 A.2d 47, 54 n.4 (Pa. 1987).

With regard to Pemberton, the Dead Man's Act applies. However, the dispute involves Decedent's testamentary disposition of his estate, including Windy Gap and the Motorcycle. Thus, Pemberton was competent to testify regardless of his interest in the property. **See id.**

With regard to Barbara, the Dead Man's Act only finds incompetent to testify those who have an adverse interest in the matter at issue. **See id.** Barbara was not named a beneficiary or contingent beneficiary in the Codicil; her status as a contingent beneficiary in the Will does not include a claim to Windy Gap and the Motorcycle; and she does not have an interest in the matter as a result of being Pemberton's spouse. **See Estate of Grossman**, 406 A.2d 726, 732 (Pa. 1979) (stating that "[w]e can conceive of no acceptable rationale for a *per se* rule disqualifying the testimony of the spouse of a surviving interested party to a transaction with a decedent."); **see also Pagnotti**, 631 A.2d at 1046-47. Nevertheless, as noted above, the matter at issue is the testamentary disposition of Windy Gap and the Motorcycle. **See Pagnotti**, 631 A.2d at 1046-47. Thus, Barbara was also competent to testify. Accordingly, the Orphans' Court did not abuse its discretion in permitting Pemberton and Barbara to testify.

In his second claim, Dunker contends that the Orphans' Court erred in finding the Codicil to be a codicil to the September 2014 Will. **See** Brief for Appellant at 17, 18. Dunker alleges that the Codicil is invalid because it lacks testamentary intent. **Id.** at 17-24. Dunker argues that the language of the

Codicil, including the phrase "All for Dick," is ambiguous and non-dispositive. *Id.* at 18, 22, 24. Dunker points out that "All for Dick" was not written by Decedent. *Id.* at 24. According to Dunker, the Codicil is invalid and unenforceable. *Id.*

> Where a writing
>
> is proposed for probate and its testamentary character is challenged, it is incumbent upon the court, in the first instance, to examine the paper, its form and its language, and determine therefrom as a matter of law whether or not it shows testamentary intent with reasonable certainty. If testamentary intent is satisfactorily revealed from such an examination by the Court, the paper should be probated….

*Estate of Logan*, 413 A.2d 681, 682 (Pa. 1980); *see also In re Estate of Shelly*, 950 A.2d 1021, 1026 (Pa. Super. 2008) (stating that whether a document is testamentary is a matter of law).

> In order to ascertain the testamentary intent, a court must focus first and foremost on the precise wording of the will, and if ambiguity exists, on the circumstances under which the will was executed, only if the testator's intent remains uncertain may a court then resort to the general rules of construction. The words of a will are not to be viewed in a vacuum but rather as part of an overall testamentary plan.

*In re Estate of Elkins*, 888 A.2d 815, 823 (Pa. Super. 2005); *see also In re Estate of Smith*, 694 A.2d 1099, 1102 (Pa. Super. 1997) (stating that "[t]o ascertain this intent, a court must examine the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding the execution of the will and other facts bearing on the question.").

J-A13038-18

"A writing need not assume a special form to take effect as a … codicil." *In re Estate of Fleigle*, 664 A.2d 612, 615 (Pa. Super. 1995). "If the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention which he wills to be performed after his death, it must be given effect as a … codicil[.]" *In re Estate of Tyler*, 80 A.3d 797, 803 (Pa. Super. 2013); *see also* 20 Pa.C.S.A. § 2502 (stating that "[e]very will shall be in writing and shall be signed by the testator at the end thereof….").

Here, the Codicil is a list of items, handwritten by Decedent. Centered and in large handwriting at the top of the note are the words "Joey's Free & Clear." Below that are the following items, listed vertically, with purported values listed to the right of each item:

| | |
|---|---|
| 2015 Torque camper | 44,000 |
| 1999 Truck | 8,000 |
| 1976 corvette | 18,000 |
| 2007 nighttrain | 10,000 |
| 2006 Horse Trailer | 14,000 |
| 1965 J.D Tractor | 4,000 |
| Farm on Bryan Ridge | 200,000 |
| Free Gas 55 acres | 4000 per acre |
| Farm 799 Windy Gap Rd | 300,000 |
| 6,000 Per Acre Free gas | 5299 |
| Acres payments | |
| 2014 M F Tractor | 16,000 payment |
| 2016 H D Trike | 40,000 |
| Contents in garage sale | |
| ALL FOR Dick | |
| Guns | |
| Bike Trailer | 400.00 |
| PnC | 29,000 |
| Sams | 3,000 |
| PnC | 3,000 |

4-23-16
/s/ Joseph W. Pemberton        8:24PM

Codicil, 4/23/16.[3]

Pemberton testified that on April 23, 2016, Decedent came to his house, asked for a pen and paper, wrote down a list of his belongings and debt, showed Pemberton the list, and said "that's all for you." *See* N.T., 1/31/16, at 56-57.  Pemberton asked "what do you mean[?] I don't see nothing on here." *Id.*  According to Pemberton, Decedent told Pemberton to write "for Dick" on the document.  *Id.*  When Pemberton asked "are you sure?," Decedent again told him to "just put all for Dick on there."  *Id.* at 57. Pemberton testified that he again asked if Decedent was sure.  When Decedent said yes, he wrote "ALL FOR Dick," as instructed, while Decedent was still standing next to him.  *Id.*  Subsequently, Decedent signed and dated the Codicil at the bottom. *Id.* at 57-58.

Similarly, Barbara testified that she had been in another room when Decedent arrived at the house. *Id.* at 67.  Barbara stated that Decedent came into the room and told her that he had just listed everything he owned on a piece of paper, and that he wanted her and Pemberton to have "everything." *Id.* at 69.  Decedent further told Barbara that he wanted them to keep the paper in case something happened to him. *Id.*

---

[3] The list contains illegible handwriting prior to the items "Free Gas 55 Acres" and "PnC 29,000" and along the left hand side of the page.  There are also stars next to the items "1965 J.D Tractor" and "2014 M F Tractor."

The Orphans' Court found the testimony of Pemberton and Barbara credible. Orphans' Court Opinion, 1/16/18, at 5 (unnumbered); *see also In re Estate of Devoe*, *supra*. The Codicil explicitly identifies the items in question, including Windy Gap and the Motorcycle, and the intent to make Pemberton the beneficiary. Further, there is no dispute that Decedent signed the Codicil at the end of the document. *See* 20 Pa.C.S.A. § 2502. Because Decedent used testamentary language, naming his beneficiary and the property, we conclude that the Orphans' Court did not abuse its discretion in probating the Codicil.[4] *See In re Estate of Devoe*, *supra*. Accordingly, we affirm the Orphans' Court's Order.

Order affirmed.

---

[4] Dunker cites to the Pennsylvania Supreme Court decision, *In re Ritchie's Estate*, 389 A.2d 83 (Pa. 1978), in support of his assertion that the Codicil is not testamentary in character. In *In re Ritchie's Estate*, a purported will bearing the words "For Aileen & Jane Executors" was examined for testamentary intent. The Court stated that the word "for," could have had "dispositive significance[,] if coupled with extrinsic evidence that it was inserted pursuant to the decedent's declarations concerning disposition of his property." *Id.* at 87. The testimony in *In re Ritchie's Estate* indicated that the decedent discussed naming Eileen and Jane the executors, not beneficiaries. Here, contrary to *In re Ritchie's Estate*, there was extensive testimony indicating Decedent's intent to name Pemberton his beneficiary. Accordingly, the testimony, coupled with the phrase "All for Dick," evidences Decedent's testamentary intent.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2018