J-A05028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: STEVEN R. OERMAN, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JEREMY D. KELLER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 873 MDA 2021 |

Appeal from the Order Entered June 3, 2021,
in the Court of Common Pleas of York County,
Orphans' Court at No(s):  6721-0702.

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED MAY 26, 2022**

Jeremy Keller appeals from the orphans' court's order revoking admission of a writing purported to be the Last Will and Testament of Steven R. Oerman to probate.  Upon review, we affirm.

The facts and procedural history are as follows.  On March 13, 2021, Steven R. Oerman died.  Oerman was survived by his three children, Brock A. Oerman, Kayla E. Matthews, and Michael B. Oerman.  Keller was Oerman's tenant.

On April 6, 2021, Keller filed a petition for letters testamentary based upon a writing from Oerman, which Keller claimed was Oerman's will.  The writing was very limited.  It was titled "Last Will and Testament of Steven R. Oerman."  The body of the writing provided: "I hereby place Jeremy D. Keller

_____

[*] Former Justice specially assigned to the Superior Court.

in charge of my estate  His decision will be final in all matters of my estate."

(punctuation omitted in original).  The writing was signed by Oerman and

marked with two bloody fingerprints.  Based on this writing, the Register of

Wills granted letters testamentary to Keller.

On April 29, 2021, two of Oerman's children, Brock and Kayla, filed a

petition appealing the Register's admission of the writing to probate and the

grant of letters testamentary to Keller.  In their petition, they asserted that

the writing was insufficient to constitute a will, and therefore, Oerman died

intestate.

Upon review, the orphans' court concluded that:  1) the alleged "Last

Will and Testament of Steven R. Oerman" was not his will; 2) Oerman died

intestate; and 3) the Register's admission of the alleged will was in error.

Consequently, the court granted the children's petition, and revoked the

admission of the writing for probate and the letters testamentary issued to

Keller.  The court further directed that, upon proper application, that the

Register grant letters to one or more of Oerman's heirs as appropriate,

pursuant to 20 Pa.C.S.A. § 3155(b)(1).  Keller filed this timely appeal.

On appeal, Keller raises the following two issues:

1. Whether a writing titled the last will and testament, dated, signed, sealed and naming an executor constitutes a will?

2. Alternatively, whether the writing was ambiguous such that extrinsic evidence should have been heard?

Keller's Brief at 3.

This Court has explained that our standard of review in such matters is narrow.

> In a will contest, the hearing judge determines the credibility of the witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion.
>
> Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside.

*In re Estate of Tyler*, 80 A.3d 797, 802 (Pa. Super. 2013) (*en banc*) (citations omitted).

In his first issue, Keller claims that the orphans' court erred as a matter of law when it failed to accept Oerman's writing as a will because the writing was testamentary in nature and appointed an executor. Keller's Brief at 5. According to Keller, the use of the term "estate" with the title "Last Will and Testament" shows that Oerman desired the writing to govern the disposition of his property after his death. Keller further maintains that Oerman's testamentary intent is evidenced by his appointment of Keller to be "in charge of" his "estate." *Id.* at 9.

In considering the legal effect of Oerman's writing, the orphans' court focused on whether the alleged will was testamentary in nature. It concluded that it did not contain a testamentary disposition of property. Trial Court Opinion, 6/3/21, at 3. Additionally, the court concluded that the writing did

not establish Keller as an executor given its non-testamentary nature. *Id.* at 3-4. Notably, the orphans' court reached these conclusions by examining only the four corners of the writing and without considering any extrinsic evidence.

To determine whether the orphans' court erred in concluding that the writing was not testamentary as matter of law and therefore was not Oerman's will, we bear in mind the following.

> No rule regarding wills is more settled than the general rule that the testator's intent, if it is not unlawful, must prevail. Moreover, the testator's intention must be ascertained from the language and scheme of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but is what is the meaning of his words.
>
> Our determination focuses on whether we are faced with a document that is testamentary as a matter of law, nontestamentary as a matter of law, or ambiguous, in which case extrinsic evidence is to be considered to resolve the ambiguity.

*In re Estate of Tyler*, 80 A.3d at 802-803 (citations omitted); *In re Estate of Shelly*, 950 A.2d 1021, 1025 (Pa. Super. 2008) (internal citations omitted, emphasis in the original), *appeal denied,* 962 A.2d 1198 (Pa. 2008). "If the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention[,] which he wills to be performed after his death, it must be given effect as a will or codicil, as the case may be." *In re Kauffman's Estate*, 76 A.2d 414, 416 (Pa. 1950). The court must determine whether, as matter of law, the instrument "shows testamentary intent with reasonable certainty." *Id.* The form and language of a writing are simply factors to be considered; an "informal instrument may

- 4 -

be a fully effective will if the language suffices to show testamentary intent."

***In re Ritchie's Estate***, 389 A.2d 83, 87 (Pa. 1978). "Testamentary intent []

is an indispensable element for the finding of a will. The writing must be

dispositive in character, and the disposition must be intended to take effect

after the testator's death." ***Id.*** "Disposition" has been construed as meaning

"the destination of the maker's property." ***See In re McCune's Estate***, 109

A. 156, 157 (Pa. 1920).

Here, the orphans' court concluded that the writing submitted for

probate was not testamentary in nature. In reaching this conclusion, the court

observed that:

> although it might look like it at first glance, the [a]lleged [w]ill
> does not make any transfer of the property of the estate. It does
> not list any property, and specify any outcome for said property.
> While it certainly provides broad discretion to the actions of Keller,
> it does not even enunciate Keller as the one to dispose of
> [Oerman's] property. . . . It never uses language directing the
> distribution of the estate in any manner, not even saying Keller
> may do with any property as he pleases. If [Oerman] intended
> Keller to have the power to distribute property, the Alleged Will
> falls meaningfully short of securing that outcome in a way to be
> supported and enforced by the Pennsylvania court system. . . . If
> this [c]ourt were to enforce the Alleged Will, it could potentially
> have the effect of falling far short of [Oerman's] intent . . . .

Trial Court Opinion, 6/3/21, at 3-4.

Based upon our review of the instrument itself, we agree with the

orphans' court that the writing did not contain any language of a testamentary

nature demonstrating Oerman's intent. Critically, the stark language does not

dispose of Oerman's assets in anyway or use any dispositive terms. It gives

no direction to Keller on how to handle Oerman's estate or indicate what Oerman wanted to happen with his assets. Even if Oerman intended to designate Keller as his executor, the writing does not express Oerman's intention regarding the disposition of his estate. Instead, it merely states that Keller's decision shall be final without stating in what regards. An "essential element of a valid will or codicil is that it dispose of property." *In re Estate of Fleigle*, 664 A.2d 612, 615 (Pa. Super. 1995).

Additionally, "[t]o make a testamentary disposition of property, a decedent must set forth both the thing given and the person to whom it is given with such certainty that a court can give effect to the gift when the estate is to be distributed." *Id.* Here, there are no words indicating the assets of Oerman's estate or anyone that he may have wanted to give or leave those assets to after his death, not even Keller.

Nonetheless, Keller argues that Oerman, by putting Keller "in charge" of his "estate," appointed Keller as his executor. As such, Keller argues that his appointment as executor, without any disposition, is enough to constitute a will. Assuming that it was Oerman's intention to do so, we, nonethtless, disagree that it is sufficient to make a will.

In support of his position, Keller relies on *In re Sando's Estate*, 66 A.2d 312 (Pa. 1949). There, our Supreme Court was asked to consider whether a signed writing which had certain portions stricken out, a codicil, and three unsigned, loose memoranda constituted a will, such that the decedent did not die intestate and were properly admitted for probate. Notably, the

uncancelled portions of the writing revoked all other wills, directed payment of debts and funeral expenses and appointed executors. In reviewing this provision, the Court observed that "a writing appointing an executor is a will though no disposition is made of the estate."[1] *Id.* at 314. However, the Court immediately limited this pronouncement stating: "***because there was no disposition of the residue an intestacy results by implication***." *Id.* (emphasis added).

Given this limitation, we conclude that Keller's reliance on ***Sando's Estate*** for the proposition that "the appointment of an executor may stand on its own as a will without specific bequests" is misplaced. Instead, ***Sando's Estate*** supports the principle that, for a will to be effective, a disposition regarding assets is necessary; otherwise, an intestacy results, *i.e.*, there is no will.

Additionally, the writings in ***Sando's Estate*** did more than appoint an executor. The initial writing gave certain directives. Further, the codicil set forth various dispositions to be made of the estate's residue. As such, the Court ultimately found that the decedent did not intend to die intestate. ***Id.*** at 315. Instead, the writings collectively constituted a will.

Here, by contrast, Oerman's writing did not set forth any disposition. Moreover, as the trial court noted, "While a valid will can certainly identify an

---

[1] We note that the cases cited by the ***Sando's Estate*** Court do not directly stand for the proposition that appointmentof an executor, alone, is sufficient to constitute a will.

executor, this document's testamentary failure meaningfully moots any attempt by Keller to maintain that purported role." Trial Court Opinion, 6/3/21, at 3. We therefore conclude that the orphan's court did not err in determining that Oerman's writing was not testamentary in nature and not a will.

In his second issue, Keller claims that, alternatively, the orphans' court erred in finding that the writing was unambiguous and not allowing the presentation of extrinsic evidence to determine the nature of the writing. Keller argues that because Oerman titled the writing as his "Last Will and Testament," Oerman intended that it be his will. Keller's Brief at 11. Keller maintains that an evidentiary hearing would aid in clarifying the meaning the language Oerman used, particularly "placing Keller 'in charge of' his estate" and "Keller's decision is 'final in all matters of [Oerman's] estate.'" *Id.* at 12. Therefore, we should remand this matter for a hearing. *Id.*

As noted above, in order for a will to exist, it must be testamentary in nature. The orphan's court must make this determination by reviewing the document purported to be a will; extrinsic evidence is only admissible if the document is ambiguous. As our Supreme Court has explained:

> [W]here a writing is proposed for probate and its testamentary character is denied, it becomes the duty of the [c]ourt in the first instance to examine the paper, its form and its language, and therefrom determine as a matter of law whether or not it shows testamentary intent with reasonable certainty. If testamentary intent is satisfactorily revealed from such an examination by the [c]ourt, the paper should be probated as a will.

On the other hand, if, from such examination, the paper is shown not to be a testamentary disposition, but is shown to be a document of another type, then it is not to be probated as a will. But, if, from such an examination, the [c]ourt should determine that a real doubt or real ambiguity exists, so that the paper offered for probate might or might not be testamentary, depending upon circumstances, then it has been held on numerous occasions by the Appellate Courts that the document presents an ambiguity which will permit the use of extrinsic evidence in aid of resolving the uncertain character of the paper.

*In re Kauffman's Est.*, 76 A.2d at 417 (Pa. 1950) (citations omitted). "The intention of testator . . . must be determined from what appears upon the face of the will. Extrinsic evidence of surrounding facts must only relate to the meaning of ambiguous words of the will. It cannot be received as evidence of testator's intention independent of the written words employed." *In re Beisgen's Estate,* 128 A.2d 52, 55 (Pa. 1956).

Here, the trial court found that the writing was not ambiguous as to whether it was testamentary. The court explained:

As repeatedly described, albeit in less specific language, in this [c]ourt's Opinion, there was not any "uncertainty" present in this [c]ourt's analysis of the "will" proffered. Rather, as the [c]ourt stated, when it came to that document, "[t]his [c]ourt can only come to the conclusion that, no, [the will does not clearly contain a testamentary disposition of property]." Most importantly in that sentence, under this [c]ourt's perception, is the word "only." There was no uncertainty as to what was contained in the alleged will. . . .

Trial Court Opinion, 7/29/21, at 1.

Based upon our review, we agree with the orphans' court that the writing itself was not testamentary or ambiguous. As discussed above, the writing clearly did not contain any disposition of Oerman's assets or give any sort of

direction for that to be accomplished. It also did not indicate what Oerman wanted to dispose of or to whom. "Where a writing by its terms clearly does not constitute a testamentary disposition, evidence of testamentary intent is not admissible." *In re Mannarelli"s Estate*, 259 A.2d 169, 170 (Pa. 1969). We therefore conclude that the orphan's court did not err in precluding the introduction of extrinsic evidence.

Based upon the foregoing, we affirm the orphan's court order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2022

- 10 -

J-A05028-22